Whisler vs. Wilkinson and others.

WHISLER vs. WILKINSON and others.

*Highway by water: New channel.*

1. The rivers of this state capable of floating the products of the country (such as logs and rafts of lumber) to mill or market, are by the common law public highways.

2. Where it was very difficult or impossible to pass logs through a chute in the dam at plaintiff's mill on such a river, but they could be passed through a break in the dam in a new channel thereby created on plain-

tiff's land, which break had been suffered to remain some two months without repair, and had caused the deficiency of water at the chute, it was defendant's right, running logs from above, to pass them through such break and new channel, doing no unnecessary damage.

APPEAL from the Circuit Court for *Monroe* County.

The plaintiff was owner of a saw mill and certain land adjacent thereto, on the Kickapoo River in this state, the power for which mill is created by a dam across said river on plaintiff's land. The defendants were owners of saw mills lower down on the same stream. The complaint avers that, on the 9th of June, 1866, defendants broke and entered the close of the plaintiff, and cut away a levee thereon about fifteen rods above the dam, so as to let the water out of plaintiff's pond and turn the river out of its natural course, forming a new channel on the opposite side of plaintiff's mill, sufficiently large to enable them to run large saw logs through it into the stream below the dam, which channel entirely drains plaintiff's pond; that in order to complete said channel so that their logs could be got through, they destroyed a bridge on that side of plaintiff's mill, which was the only way of access for teams, logs and lumber to said mill; that plaintiff had thus been deprived of the use of her mill, to her damage $200; that defendants had a large number of logs in the stream above, which they were still running and threatened to run through said new channel, in spite of plaintiff's efforts to repair the levee and bridge; that the mill and dam were in great danger of being swept away; and that unless defendants were restrained by the court, plaintiff would suffer an irreparable injury. Prayer for an injunction, and a judgment for $200 damages, etc.

The answer avers that plaintiffs have been engaged in manufacturing lumber at their mill more than twelve years, during all which time it was their custom to cut the logs so

manufactured on lands above plaintiff's mill, and float them down the stream past said mill; that such had been the custom of lumbermen on said stream for more than twenty-one years before January 1st, 1866; that said Kickapoo River had been used during all that time as a public high-way for the running of logs and lumber, from its source to its mouth, without interruption from any person; that the mill-dams thereon (and especially plaintiff's dam) had been constructed with a chute, so as to allow the free passage of logs and lumber over the same; that in February, 1866, by reason of high water in said river, the levee just above plaintiff's mill broke away, so that the channel was changed, and the waters of said river were carried around said mill as described in the complaint, and ever since that time had run in said new channel, and not over said dam and chute of the plaintiff; that about the 9th of June, 1866, the water of said river rose to a driving height, and defendants drove a large quantity of their logs down said stream and past plaintiff's mill to their own; that they drove them through said new channel because they could not otherwise have driven them past said mill; and that plaintiff had sustained no injury by reason of their said acts. Except so far as thus admitted, the answer denies the material allegations of the complaint.

The plaintiff's evidence tended to show that the break in her levee was made, and the new channel over her land was formed, in April, 1866; that the defendants had torn away a slab bridge (or "jam") across said channel, to let their logs through; that they could not otherwise have gotten them through said channel; that the running of the logs enlarged the break and deepened said channel, thus dimin-ishing the water in plaintiff's pond; and that the damages suffered were about $200, which included $100 as the esti-mated cost of removing sand bars above and below the mill,

which the witnesses thought had been formed in consequence of the running of defendant's logs through the new channel. The character of the evidence in other respects will appear from the opinion. The court instructed the jury that the defendants had no right to destroy the dam [levee] or injure it, and were responsible for the damage done; that the only question was as to the amount of the damages, and defendants were liable for the slabs which formed the bridge across the cut-off. It refused the following instructions asked by defendants: " 2. If there was no other way for defendants to run their logs out of the pond, except through the new channel made by the break in the dam, and the break did not occur from the fault of defendants, but by the neglect of the plaintiff, then defendants had the right to run their logs through the new channel, doing no more damage than was necessarily incident to the running of the logs. 3. If you find that the public had acquired an easement over the Kickapoo River at or near the plaintiff's mill, by the uninterrupted use thereof for twenty years, and that by reason of the break in the dam, defendants could not run their logs out through the chute therein, and did no more damage than was necessary to get them out through the break, then you must find for the defendants."

Verdict for plaintiff, for $165 damages; new trial denied; and defendants appealed from a judgment on the verdict.

*Montgomery, Tyler & Dickinson*, for appellants, among other things argued that the Kickapoo River was a navigable stream and a public highway, because, as a matter of fact, it was capable of being used for the purpose of running logs and rafts to mill and market, (Angell on W. C., ch. 13; *Comm'rs, etc., v. Kempshall*, 26 Wend., 404; *Morgan v. King*, 35 N. Y., 454; *Brown v. Chadbourne*, 31 Me., 9; *Moore v. Sanborne*, 2 Mich., 519; *Scott v Willson*, 3 N. H.,

321; *Wadsworth v. Smith*, 2 Fairf. (Me.), 278; *French v. Camp*, 6 Shep. (Me.), 433); and that the public had acquired an easement in it by an uninterrupted use for twenty years. *Belknap v. Trimble*, 3 Paige, 577; *Smith v. Adams*, 6 id., 435; *Baldwin v. Calkins*, 10 Wend., 167; 11 Barb., 457; 19 id., 179, 195; *Clements v. West Troy*, 10 How. Pr., 199; *Shaw v. Crawford*, 10 Johns., 236; *People v. Platt*, 17 id., 195, 212; *Sheldon v. Rockwell*, 9 Wis., 166; *Rooker v. Perkins*, 14 id., 79; Angell on W. C., secs. 200, 210.

*Graves & Wheeler*, for respondent. [No brief on file.]

DIXON, C. J.    The rivers of this state capable of floating the products of the country, such as saw-logs or rafts of lumber, to mill or market, are by the common law public highways by water. The authorities cited by counsel for the defendants are abundant to this point. It would be exceedingly detrimental to the public interests, especially in the pine-growing regions of the state, if this were not so. The river upon which the plaintiff's mill is situated, is of this character. It appears from the testimony of some of her own witnesses, that it is large enough above her mill to float logs of the common size at an ordinary stage of water. It furthermore appears beyond dispute, that it has been constantly used, at all proper seasons of the year, for the purpose of floating logs to mills below, for a period of over twenty years. It was likewise shown by witnesses on both sides, that at the time the defendants' logs were run down the river to the plaintiff's pond, it was exceedingly difficult, if not wholly impossible, to pass them through the chute constructed in the dam at her mill for that purpose, but that they were easily floated through the break in the dam, or cut-off of the stream, passing around the mill, occasioned by the break. The difficulty of passing the logs through the chute arose partly from low water in the chute, caused

by the break in the dam, and partly from the obstruction of the chute by a jam of logs which had been run into the plaintiff's pond some time before for the purpose of being sawed at her mill. The break in the dam, and consequent cut-off, by which a new channel had been formed, had existed for a period of two months or thereabouts, without having been repaired by the plaintiff so as to restore the river to its former condition. What, under these circumstances, were the rights of the defendants in relation to running their logs? We think clearly, with proper care to prevent any unnecessary damage to the plaintiff, they were entitled to run their logs through the cut-off or new channel, and consequently that the court erred in refusing to give the second and third instructions asked by the defendants.

*By the Court.*—The judgment must be reversed, and a *venire de novo* awarded.