Wisconsin River Improvement Company vs. Lyons.

---

## WISCONSIN RIVER IMPROVEMENT COMPANY VS. LYONS.

*Exceptions—Practice—Navigable Streams—Riparian Rights—Injunction.*

1. Exceptions to the facts found by the judge who tried a cause, or to his conclusions of law, filed more than ten days after service of written notice of the entry of judgment (the time for such filing not having been extended,) are of no effect. 2 Tay. Sts. 1639, § 19.

2. Where there are no exceptions, this court must determine whether the conclusions of law are correct upon the facts found; or whether the judgment is sustained by the pleadings and the finding. 2 Tay. Sts. 1636, § 12; 13 Wis., 75; 23 id., 515.

3. Under the laws of the United States, the title of purchaser of lands bordering on a navigable stream stops at the edge of the stream, and does not extend to the center; but he has the same right to construct suitable landings and wharves as riparian proprietors on navigable waters affected by the tide. *R. R. Co. v. Schurmeir*, 7 Wallace, 272.

4. In holding that the title of the purchaser extends to the center of the stream, this court also held (*Jones v. Pettibone*, 2 Wis., 319) that he took subject to the public right of navigation; and this includes the right of the public to do anything within the banks of the stream which may be considered necessary for the benefit of commerce and navigation. *Arimand v. G. B. & M. C. Co.* (unreported).

5. The legislature has power to prohibit the erection of any dam, bridge or other structure within or over any navigable stream, which may obstruct or impede the free navigation thereof.

6. By the ordinance of 1787, the constitution of this state, the articles of compact between it and the United States, and sec. 1, ch. 41, R. S., the Mississippi river and the *navigable waters leading into it* and the St. Lawrence are declared to be common highways, and forever free, etc.; and this description includes the Wisconsin river.

7. By sec. 2, ch. 41, R. S., "all rivers and streams of water in this state, in all places where the same have been meandered, and returned as navigable by the surveyors employed by the United States government," are "declared navigable to such an extent that no dam, bridge, or other obstruction may be made in or over the same, without the permission of the legislature." Defendant, without legislative permission, built a dam in the Wisconsin river at a place where it is navigable in fact. *Held*, that the erection and maintenance of such dam is unlawful, whether it does or does not interfere with the navigation of the river.

8. Where plaintiff, a company incorporated for the improvement of a nav-

igable stream, had sustained a loss of $600 in the collection of its tolls by the erection of a dam obstructing the navigation of the river, which it was sought to enjoin, *held* that this was such private and special injury as to entitle it to an injunction. *Walker v. Shepardson*, 2 Wis., 384.

APPEAL from the Circuit Court for *Portage* County.

The action was brought by the *Wisconsin River Improvement Company* in the Circuit Court of Wood county, to restrain the defendant *Lyons* from erecting and maintaining a dam across the main channel of the Wisconsin river, at a point known as Grand Rapids, where the plaintiff company was engaged in improving the navigation of the river by piers, wing dams and excavations, operating under a charter authorizing it to enter upon any lands within the banks of said river, and to improve the navigability thereof. The complaint alleged that plaintiff had expended large sums of money in improving the navigation of the river by excavations and other improvements at the Grand Rapids, and that defendant was erecting a dam at this precise point, which would seriously interfere with the navigation of the river, and greatly impair the value of plaintiff's franchise in collecting tolls. The answer denied that the building of the dam would interfere with or hinder the navigation of the river, and alleged that it would greatly improve said river, that rafts could be run over the rapids at that point with a greater degree of safety with the dam than without it, and that it would be of great value to the public as well as to plaintiff's franchise. The answer also alleged that defendant was the owner of the bank of said river adjacent to the dam, as well as of the soil and bed of the stream, holding the same by grant as a water power, and that as such riparian owner he was justified in the construction of his dam. The evidence and finding of the court are sufficiently stated in the opinion. The action was removed by change of venue to Portage county, where the injunction was refused and judgment rendered for defendant, from which plaintiff appealed.

*G. L. Park,* for appellant, to the point that the bed and banks of a navigable stream below common high water mark, belong to the state as trustee for the public, the state holding the proprietary interest in the same, cited 2 Selden, 522 ; 13 How., 381 ; 7 Wal., 272. It follows that defendant has only a usufructuary interest in the river, and a right to the bank for the purpose of access to the stream, but can make no erections in the bed thereof without legislative authority. Chapter 41, § 2, R. S., providing that no dam, bridge, or other obstruction may be made in or over navigable rivers without legislative sanction, is a mandatory inhibition preventing riparians from making such erections.

*Miner Strope,* for respondent, argued that riparian proprietors were entitled to the use of navigable streams for manufacturing purposes where such use did not interfere with the free navigation of the stream, and was not inconsistent with the rights of the public. Angel on Water Courses, (6th edition), pages 102 and 103 ; *Jones v. Pettibone,* 2 Wis., 320 ; *Walker v. Shepardson,* 4 Wis., 511.

DIXON, C. J. The written findings of fact and conclusions of law of the court thereon were filed with the clerk and final judgment thereupon entered in the court below, on the 10th day of July, 1871. On the 19th day of August, 1871, as appears by the record, written notice of the entry of judgment was served on the plaintiff's attorney. The exceptions of the plaintiff to the facts found by the judge and to his conclusions of law were not filed with the clerk until the month of December after, and more than ten days after the service of the written notice of the entry of judgment. It does not appear that the time for filing such exceptions was enlarged, either by stipulation of the parties or by order of the court, and they were consequently filed too late and no effect can be given to them. Laws of 1860, chap. 264, sec. 13. 2 Tay. Sts., 1639, sec. 19.

But notwithstanding the want of such exceptions the ques-

tion remains whether the conclusions of law are correct upon the facts found, or whether the judgment is sustained by the pleadings and the finding of the court. This was so held in *Blossom v. Fergurson,* 13 Wis., 75, and is in accordance with the provision of sec. 11, chap. 264, Laws of 1860, being the same as sec. 12, p. 1636, 2 Tay. Sts. See also *Brant v. Salisbury,* 23 Wis., 515.

The circuit court found as a fact, that if the dam in controversy had been constructed to completion in accordance with the intention and plan of the defendant and as the same had been in part constructed when the injunction in this action was served and further progress of the work arrested, that the same would not have been an obstruction to the navigation of the river with rafts or down-stream bound boats, such as ordinarily navigate the river at that place. As a conclusion of law, the court found and decided that the dam, not thus constituting an obstruction, might be lawfully erected and maintained by the defendant.

It is contended by the counsel for the plaintiff that the defendant as riparian proprietor, or as representing the rights of the riparian proprietor at the point where the dam was being built, has no title or interest in the bed of the stream or the land over which it runs, and does not take *usque ad filam aquæ* as the boundary of his estate, but only to the margin of the river or line designated in the government surveys as the meandered line. In this position the counsel appears to have been expressly overruled by the decision of this court in *Jones v. Pettibone,* 2 Wis., 319, 320, where it was held that the purchaser from the United States in such case takes to the center of the stream. But the same question was before the Supreme Court of the United States and fully discussed and decided in *Railroad Company v. Schurmeir,* 7 Wallace, 272, and the conclusions reached by that court were in some respects in conflict with the above decision made by this court. It was there held that under the operation of the laws of congress, the title of the purchaser to lands bordering on a

navigable stream stops at the stream and does not extend to the center, but that he has the same right to construct suitable landings and wharves, for the convenience of commerce and navigation, as riparian proprietors of navigable waters, affected by the ebb and flow of the tide.

But it was also held, in *Jones v. Pettibone*, that the title of the purchaser to the center of the stream was taken subject to the public easement or right of passage and navigation, and when the nature and extent of this easement or right are considered, it will be found for this purpose to be almost or quite immaterial whether he is regarded as holding to the center of the river or only to the margin of it. This easement, or right of the public to regulate, control and direct the flow of the navigable waters, to impede or accelerate such flow, to deepen the channel or to remove obstructions found in it, or to change the direction of the current from one bank of the stream to the other, or to make an entirely new channel, and, in short, to do anything within the banks of the stream itself which may be considered for the benefit and improvement of commerce and navigation, will be found to be a most extensive and absolute one. This subject was alluded to, and the general rule of law stated in *Arimand v. Green Bay and Mississippi Canal Co.*, recently decided by this court, where numerous authorities were collected in the briefs of counsel.

This right on the part of the public to regulate and control such navigable streams in the interest of commerce and navigation, includes the right on the part of the legislature to prohibit by statute the erection of any dam, bridge or other structure within or over the same, which may operate to impair or obstruct the free navigation thereof, unless the permission of the legislature be expressly obtained for that purpose. This power of the legislature to make such rules and regulations as it may see proper to impose for the protection of the rights of the public, was directly recognized and assented to by the Supreme Court of the United States in *Yates v. Milwaukee*, 10

Wallace, 497 (3 Chicago Legal News, 145) even as to those parts of such streams as are not navigable in a state of nature, and can only be made so by dredging or some other artificial means.

It is clearly established in evidence, found by the court, and a point not in dispute that the Wisconsin river at the place where the projected dam was in process of construction by the defendant, is navigable *in fact*, and not a stream which has been merely declared so by statute and the obstruction thereof prohibited. It is a stream capable of and which has long been used for floating rafts and fleets of lumber and logs, and boats loaded with the products of the country, to mill and market, and as such is a public highway. *Whisler v. Wilkinson*, 22 Wis., 572. It is also a fact not controverted that the dam reaches and is to cross the center and navigable part of the stream, where boats and rafts in their downward passage are and must be floated in order to navigate the river successfully. No license or permission by the legislature to the defendant to erect or maintain the dam is shown or asserted.

Under these circumstances it is impossible for this court to see how, in view of the statutory regulations which exist upon the subject, the conclusions of law of the court below can be sustained or its judgment affirmed. The statute expressly declares, not only of such streams as are navigable in fact, but of all meandered streams, which includes many that are not so navigable but are so declared for the purpose of the statute, "that no dam, bridge or other obstructions may be made in or over the same, without the permission of the legislature." R. S., ch. 41, § 2; 1 Tay. Sts., 749, § 2. The first section of the same statute pursuing the language of the ordinance of 1787 and of the constitution and articles of compact between this state and the United States, enacts that the Mississippi river and the navigable waters leading into it and the St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, etc., and all must know that the Wisconsin river is one of the streams so included. How, in view

Wisconsin River Improvement Company vs. Lyons.

of this positive statutory prohibition, it can be maintained that the defendant may lawfully erect the dam in question, even though when erected it should prove no obstruction or detriment to the navigation, is certainly more than this court is able to perceive. The words of the statute are that *no dam* should be made without the permission of the legislature, and it is impossible to evade these words, or to avoid the effect of the prohibition by speculating upon the possibility that the dam, when erected, may not impede or obstruct the navigation, which after all is but mere speculation. As stated by some of the witnesses, no man can predict or anticipate with any certainty, what the effect of the dam when completed may be upon the navigation, and it is enough for the courts to know, and absolute law unto them, that the legislature, acting within the scope of its powers, has said that the party is a trespasser upon the rights of the public and shall not erect his dam without public permission, even though the same may prove, as he claims, to be a benefit instead of an injury to the navigation. We know of no way of getting along with the positive provisions of such a law, except that of being governed by and giving full effect to its requirements.

With respect to the other point involved, as to whether the plaintiff has shown such private and special injury from the obstruction as will enable it to maintain this action, the finding of the court below seems to make it perfectly clear. The court found that the plaintiff had already sustained damages in the loss of tolls to the amount of $600. This was sufficient within the principles laid down by this court in *Walker v. Shepardson*, 2 Wis., 384, and by other authorities, to enable the plaintiff to maintain its suit in equity to restrain and prevent the further commission of the nuisance and to cause its abatement.

It follows from these views that the judgment appealed from must be reversed and the cause remanded with directions to enter judgment for the plaintiff in accordance with the demand of the complaint.

*By the Court.*— It is so ordered.