## Case No. 8,220.

### LEIGH v. HOLT.

[5 Biss. 338; [1] 5 Chi. Leg. News, 528.]

Circuit Court, E. D. Wisconsin. July Term, 1873.

OBSTRUCTIONS IN NAVIGABLE RIVERS — RIGHT TO CONSTRUCT PIERS OR BOOMS — ACQUIESCENCE — DUTY OF BOOM OWNER — RIGHTS — HOW CONSTRUED — BOOM OWNER MAY USE CHANNEL REMAINING.

1. The Oconto river is, in contemplation of law, a navigable stream.

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2. Individual property owners upon its banks have, strictly speaking, no right to construct booms or piers in it without authority from the legislature.

3. The status of the owner of such boom or pier is not changed by the fact that they were purchased and not constructed by him.

4. Where the construction of such piers and booms had been acquiesced in by the public, their owners must be considered to have acquiesced in their construction and maintenance by one another. One boom owner cannot bring a suit against another simply for the construction and maintenance of a boom.

5. Nevertheless it is the duty of the boom owner not to interfere with the rights of other persons or their property on the river, and he must use unusual diligence in keeping a passage-way clear.

6. It seems, that as to any person not connected with any such obstruction, the construction and maintenance of piers or booms would be illegal, and the owner would be accountable for any damage so sustained.

7. The rights of the public should be liberally, and those of the boom and pier owners strictly, construed.

8. The owner of a pier or boom does not thereby cease to have the right to use the channel which remains—he still retains that right in common with all others.

At law.

Finches, Lynde & Miller and Mr. Tracy, for plaintiff.

E. A. Storrs, for defendant.

DRUMMOND, Circuit Judge (charging jury). This is an action to recover damages sustained by the plaintiff in consequence of obstructions to the Oconto river, placed there, as is alleged, by the defendants. The cause of action as set forth in the declaration is substantially this: That the plaintiff was the owner of a saw-mill on Little river, a tributary of the Oconto river; that he manufactured lumber there, and sent it to market by the river, and also in that way obtained his supplies; that the defendants were the owners of land bordering on the Oconto river, and that they also had a mill upon the river; that along the banks of the river where they owned the land, they had constructed a boom to retain their logs as they might need them for sawing; that there was a large number of logs annually descending the river, of which the defendants owned a considerable portion; that there were piers in the river connected with the boom; and that there was a jam of logs there more or less frequently, which was sometimes continued for many weeks, and which prevented the plaintiff from sending his lumber to market; and he alleges that in consequence of these booms, piers and jam of logs, he sustained special damage during the years 1867, 1868, 1869 and 1870.

The principal damage is, however, said to have been in the year 1867, when, as he states, rafts of lumber were detained several weeks, and in one or two instances particularly the lumber was prevented from reaching the mouth of the Oconto river so that it could be shipped to Chicago and Milwaukee at a time when it was at a very high price, and that in consequence of the delay caused by the obstructions which the plaintiff met in the transit of his lumber from his mill to the mouth of the Oconto river the price fell and he sustained very serious loss.

It is alleged that the obstruction was at the piers of the defendants, and that after the lumber passed the piers the navigation was substantially open to the mouth of the river, and the question is whether these allegations in the declaration have been sustained by the evidence in the case.

And first as to the legal status of the Oconto river, upon which these piers and booms of the defendants were maintained. It is conceded that the Oconto river, although perhaps in one sense not strictly navigable, yet in contemplation of law is to be treated as a navigable river, with all those rights which can be claimed for navigable rivers as connected with the general public. It was a meandered stream, and I think that the court will have to say to you that, strictly speaking, no individual owner of property upon the banks of the river had the right to construct a boom or to place a pier in the river without authority from the legislature. So that we have to assume in the investigation of this case, that although these piers and booms were not placed there by the defendants, but were purchased by them, in point of strict law, their maintenance as well as construction was a violation of the rights of the public; but it would be wrong for us to lose sight of the particular circumstances connected with the construction of piers and booms upon this river, and we must not forget either that the plaintiff is himself a mill-owner upon a stream, as I understand, legally in the same condition as the Oconto. There seems to have been a sort of general public acquiescence, if I may so say, judging from the evidence, in the erection and continuance of piers and booms upon this river. In other words, the state, which undoubtedly would have the right to speak, has never yet spoken, and so far as we know, has never instituted any proceedings to put an end to the piers and booms which are maintained upon the river, and it could hardly be said, if this were an action brought by a mill and boom owner on the Oconto river, that he could maintain a suit against a man simply for the construction or maintenance of piers and booms; so that while it may be true that as against the state and the public, the construction and maintenance of piers and booms are illegal, still parties may waive their right to object to the construction and maintenance of both piers and booms; and it is a question proper for the jury to consider in this case, whether the plaintiff is in such a condition that he can complain of the construction and maintenance of the piers and booms as such. And

we should bear in mind, in considering this part of the case, what probably has caused the silence of the public for so long a time (for you will recollect that these piers and booms have been continued there for a great many years), namely: that there must be some device by which logs cut at the sources of a river shall be detained in their transit down, so that they can be manufactured into lumber and made available; and a great deal, of course, will depend upon the nature and character of the stream down which the logs are floated, and I suppose the true explanation why the state or the common public has never done anything in relation to this matter, is because it has been felt that there should be some arrangement by which the logs could be retained floating upon the river until they are manufactured. So that while we lay down this as the strict rule of the law, we qualify it by calling your attention to the circumstances connected with the construction and maintenance of the piers and booms upon this river; also to the particular facts connected with the position and status of the plaintiff himself as a manufacturer of lumber upon a tributary of the river.

If this were a suit by a person not connected with the booms and mills, and his property was arrested in its transit down the river, I think he would occupy a different position from the owner of a mill or a boom; then he would have the right to call upon the court for an unqualified rule upon the subject, and the court would be compelled to say that, as to him, the construction and maintenance of the piers and booms would be illegal, and for the detention of his property the owner of booms and piers would be held accountable.

With these remarks as to the character of the stream, the silence of the public, and the situation and circumstances of the various parties as to the subject matter of the controversy, we will proceed one step further in the case and determine whether or not, if the plaintiff has waived the right to complain of the mere construction and maintenance of the piers and booms, there has been any act of the defendants causing a detention of his property in its transit to market. If it be true that as respects the plaintiff, the defendants could maintain the piers and booms there, still they could only be maintained in such a way as not to interfere with the rights of other persons or their property in its transit up and down the river, and it seems to me that conceding all that, the court has in one aspect of the case, conceded from the silence of the public, and the position of the parties in reference to the piers and booms, that the rights of the public in relation to the passage-way for the property of each citizen should be liberally, and the rights of the owners of the piers and booms strictly, construed. I think that it would be their duty even to be more than

ordinarily diligent in keeping clear the passage-way down the river. If their piers and booms are to stay there at all, it should be so that the passage-way should be kept clear. Of course they are not to perform impossibilities. You are to construe their acts with reference to the circumstances surrounding anything which becomes a matter of investigation on your part. For instance, in the removal of logs on their way down the river, the evidence shows that the logs are thrown into the river loose; that they float down with the current. Of course, in being thus thrown in and floating together in great and small quantities, there is a liability, without any force from human hands, to lodge in the river—to jam, as it is termed. Now, under such circumstances, it is the duty of all parties who own piers and booms on the river, to use unusual diligence in clearing a passage-way, so that they may pass on, and in considering the conduct of the defendants upon this point of the case, it will be for you to determine whether they have done all that skill and labor, under the circumstances, could reasonably do in order to keep the passage-way clear.

The defendants would not be liable for the obstruction of the river below, nor would they be held responsible if logs could not be put through their piers or divided there because they were obstructed below. When they have done all that they can, so far as they and their property are concerned, they, under the aspect of the case which I am now considering, are relieved from responsibility.

It is claimed, on the part of the plaintiff, that conceding the right of the defendants to maintain piers and booms, as the only object of the defendants was to manufacture their lumber, they had no right to use the channel in common with the public for their own logs down the river, if they could have floated them into the boom as, thus removing their own logs from the river, there would to that extent be removed an obstruction to the passage of the logs of others. It is almost impossible for the court to lay down any absolute rule upon this branch of the case. It cannot be said, conceding their right to maintain the piers and booms, that the defendants had ceased to have a right to use the channel which remained. They had that right in common with all others; they would not forfeit it by the fact that they had piers and booms upon the river, but no man would have the right to monopolize the river, or prevent a passage of the property of others. In other words, each man should so use the right which he has as not unnecessarily to interfere with the rights of others, and it is a question which the jury may consider without the court giving any absolute rule upon the subject, if the boom of the defendants was more or less open, whether they might not have transferred to their boom logs which might be interfering with the logs or

lumber of others in their transit down the river. It is for you to determine whether or not there was any obstruction unnecessarily on the part of the defendants with the property of the plaintiff in going up or down the river, and whether the plaintiff was damnified by such obstruction.

The jury found a verdict for plaintiff.

NOTE. As to how far riparian owners may erect wharves and piers, and the limitation by navigability of the stream, consult Dutton v. Strong, 1 Black [66 U. S.] 23; Yates v. Milwaukee, 10 Wall. [77 U. S.] 497. The erection of a dam without legislative authority in a river, in fact navigable, is unlawful, whether it interferes with the navigation of the river or not. Wisconsin River Imp. Co. v. Lyons, 30 Wis. 61. Any erection or obstruction not authorized by competent legislative authority, which materially interferes with the paramount right of navigation, is unlawful. Northwestern Packet Co. v. Atlee [Case No. 10,541], decided by Dillon, J., in the United States circuit court of Iowa.