State ex rel. Priegel, Appellant, vs. Northern States Power Company, Respondent.

*December 7, 1942—March 9, 1943.*

348

For the appellant there was a brief by *Stafford & Stafford* of Chippewa Falls, and oral argument by *Harold E. Stafford.*

For the respondent there was a brief by *Ramsdell, King & Linderman* and *Beach, Campbell & Holland,* all of Eau Claire, and oral argument by *Bailey E. Ramsdell.*

FOWLER, J.   The plaintiff, upon leave of court granted pursuant to sec. 280.02, Stats., brought the action "to enjoin a nuisance."   The ground of the action, as conceived by the pleader is that the Chippewa river, located in Wisconsin, is

navigable water; that the public has a right to navigate and to fish in navigable waters; that a dam and power plant owned and operated by the defendant, by the manner of its operation, cuts off the exercise of said public rights in the waters of said river for a distance of four thousand five hundred feet, and restricts the flow of water in said river for a distance of four thousand five hundred feet contrary to sec. 31.34. The material facts appear from the findings of the circuit judge set forth preceding the opinion. The facts are mostly undisputed and where at all in conflict are supported by the evidence.

We will first take up consideration of the case in respect of noncompliance with sec. 31.34, Stats.

This statute is not applicable because, (1) by its terms it does not apply where water is discharged directly into a storage pond; and (2) the public service commission is vested with power to determine whether the minimum flowage declared by the statute is necessary for the preservation of fish life. The statute reads as follows:

"*Flow of water regulated.* Each person, firm or corporation maintaining a dam on any navigable stream shall pass at all times at least twenty-five per cent of the natural low flow of water of such stream, except as otherwise provided by law. This section, however, shall not apply to a plant or dam where the water is discharged directly into a lake, millpond, storage pond or cranberry marsh, nor shall it apply to cases where in the opinion of the public service commission such minimum discharge is not necessary for the protection of fish life. Any person, firm or corporation violating any of the provisions of this section shall be subject to a fine of not less than fifty dollars nor more than one thousand dollars."

(1) It is to be noted that the primary purpose of the statute is to protect the rights of lower riparian owners to a reasonably adequate natural flowage of the stream against upper owners cutting off that flowage. This appears from the provision that the statute does not apply where the discharge from the dam

empties directly into a lake or storage pond in which case there is no lower riparian owner to be injured. No lower riparian owner is here affected because the flowage from the power plant empties back into the regular river bed and thence directly into the Wissota storage pond and the defendant owns the land on both sides of the river between the gates of the dam and the point where the tailrace of the power plant empties into the river bed. Thus to require discharge of the minimum flowage would not serve the primary purpose of the statute.

The controversy involved is largely as to what comprises a dam within the meaning of sec. 31.34, Stats. The plaintiff contends that the dam is limited to the structure directly across the river bed at the head of the rapids. The defendant contends that the term includes the millrace or canal carrying the impounded water to the powerhouse. Under the plaintiff's contention, to bring the exemption respecting discharge directly into a storage pond into operation the discharge must be from the floodgates. Under the defendant's contention it may be from the tailrace of the power plant. We conclude that the defendant's contention should be sustained.

By Webster's Dictionary the word "dam" is used to designate not only the structure that impounds the water, but the pond in which the water is impounded. By the adjudicated cases the word has both these meanings. *Colwell v. May's Landing Water Power Co.* 19 N. J. Eq. 245, 248. From the structure directly across the river at the head of the rapids comprising the flashboards and the gates for the discharge of water at floodtimes earthwork to confine the impounded water extends on the west side of the pond and millrace for the entire distance to the powerhouse, and on the east side also for about two thousand eight hundred feet north from the powerhouse. The water in this race is as much water impounded by the dam as is the water at the flashboards and the floodgates. Dams by common knowledge and understanding consist of not only the structure comprising the floodgates and flashboards

.between the riverbanks proper, but the wings of earthwork extending from that structure as far as such earthwork extends. It is further to be noted that the public service commission and its predecessor the railroad commission interprets the word "dam" as including the entire works from flashboards to tailrace, as appears from the records of proceedings before those bodies, of which we take judicial notice, and some of the millraces or canals leading the impounded water to the powerhouse or mill that they supply are longer than the instant canal. They interpret the word "dam" as including the entire development. This particularly appears from the record of the proceedings before the commission for issuing a permit for the construction of Grandfather Fall dam. In those proceedings a permit was issued by the commission in June, 1938, for the construction of a dam under secs. 31.06 to 31.095, Stats., of a power-development plant consisting of an upper existing dam with a head of thirty feet and carrying the water therefrom at its water level on high land by a canal and woodstave pipe line for a distance of approximately four thousand six hundred feet, according to the scaled plan of the works. At the lower end of the pipe line a power plant was constructed and by means of a penstock a head of ninety-five feet was created. The old river bed was left by the works in practically the same situation as in the instant case. This was considered as not destroying the navigability of the river under the rule of *Dwinel v. Barnard,* 28 Me. 554, 562, wherein it is held that one who forms a new channel to conduct the waters of a navigable stream thereby authorizes the public to use the new channel for the purpose of navigation to which the old channel was used for or adapted to. Of like import are *Whisler v. Wilkinson,* 22 Wis. 572, and *Weatherby v. Meiklejohn,* 56 Wis. 73, 13 N. W. 697. Manifestly the instant canal is an improvement over the rapids in the river bed for boating, which is the only navigation the river is now adapted or subject to.

A question arises in our minds whether in any event the minimum discharge declared by the statute could be enforced without compensating the defendant for loss of power consequent upon such taking. We have here a development of which the public service commission authorized the purchase in 1939 at a price of nearly two and a half million dollars. The relator asks that the owners be required to enjoin the use of one fourth of the natural flow of the stream and lower the head of the pond to the extent that it would be diminished by so diminishing its use. How much the diminished use would reduce the value of the development we do not know, but manifestly it would diminish it by a large amount. The development was constructed and has been in constant operation since 1923. Sec. 31.34, Stats., was enacted in 1933. Under the *Water Power Cases,* 148 Wis. 124, 145, 134 N. W. 330, would ordering the discharge demanded be taking property for public use without compensation? Determination of this question is not necessary to decision of the case and we shall not discuss it.

(2) As to fish conservation, sec. 31.34, Stats., provides that it shall not apply "where in the opinion of the public service commission such minimum discharge is not necessary for the protection of fish life." Under this provision the determination whether the discharge at the flashboards of the dam is necessary is within the jurisdiction of the commission, and the court cannot act in the matter until the commission has first acted. It appears that the commission was informally requested to act for that purpose in the instant case by ordering discharge at the flashboards of the minimum amount of water and informally by letter declined to act. Either this must be considered as *res judicata* in the matter because the courts were not resorted to in the statutory method to procure a review if the letter referred to be taken as an action of the commission, or if it be not so considered, the courts cannot be resorted to until a proper application is made to the com-

mission and it has by order acted or declined to act when the courts may act by reviewing action if appealed to in the statutory manner or by *mandamus* to compel action if it has declined to act.

Plaintiff also contends that the condition complained of should be abated because the defendant has not constructed a fishway as the act authorizing the construction of the dam, ch. 172, Laws of 1903, provides shall be done. The circuit court declined to entertain the contention because no issue as to fishways was raised by the complaint, and because permission to bring an action to abate the claimed nuisance for want of a fishway was not procured from the court. We consider that the ruling was proper. Besides, the court found, as is manifest, that "fishways would not benefit the situation and would be impracticable." A fishway if constructed would necessarily be at the flashboards of the dam or the tailrace of the powerhouse. Neither could have any possible effect upon the condition of the river bed which is the thing the plaintiff seeks to have abated.

Coming now to the contention of the plaintiff that the public is deprived by the defendant's works of its right to fish in the public waters of the state, we concur in the proposition that the public has such right. *Diana Shooting Club v. Husting,* 156 Wis. 261, 145 N. W. 816. But we do not concur in the view that that right is taken away because by lawful diversion of water from its original river bed in case a few feet or a mile of that bed is left bare. The public is not deprived of its right to fish in Chippewa river. Doubtless the public right of fishing is in fact enhanced by the creation of the pond resulting from the defendant's works. We do not perceive why the diversion of the water into the canal does not transfer the right of the public to fish in the canal, as the Maine court in the case above cited held as to navigation. We do not perceive anything in the evidence to indicate that the right of the

public in the canal is any less productive of the catching of fish than fishing in the rapids of the river formerly was. It is true that the conservation commission has prohibited fishing in the canal, but fishing in the canal is prevented by this order, not by the change in the flow of water in the river by the construction by the defendant of its dam and powerhouse in 1923. In fact the diversion of water through the canal enhances the ability of the public to catch fish in the river bed except as that right is curtailed by orders of the conservation commission and the patrolling of the bed by its game wardens and the prohibition by the defendant of the public to enter upon its land to fish in the old river bed. The trial judge found that the destruction of the fish resulting from the diversion of water from the river "is small" and "insignificant in value as compared with the expense of providing better protection for the fish." We consider that this is equivalent to finding that the "small" destruction of fish caused by the dam is not a nuisance. It is true that sec. 31.25, Stats., declares any violation of ch. 31, Stats., a nuisance. But this does not make it so necessarily. "The legislature has no right arbitrarily to declare that a nuisance which in fact is not so." *Water Power Cases, supra,* quoting from *Lawton v. Steele,* 152 U. S. 133, 137, 14 Sup. Ct. 499, 38 L. Ed. 385. The *Lawton Case, supra,* involved the confiscation of fish nets, use of which was prohibited by statute. In juxtaposition with the sentence from the opinion above quoted is the following: "To justify the state in thus interposing its authority in behalf of the public, it must appear . . . that the means . . . for the accomplishment of the purpose . . . [are] not unduly oppressive." The trial court in effect found that the "means" open to the defendant for preventing the destruction of the fish involved were "unduly oppressive" and we consider that his finding should be sustained.

Under the rules above stated it would be conceded doubtless that the destruction of a single fish by the closing of the floodgates on recession of a flood would not constitute a nuisance in fact. The line must be drawn somewhere. The circuit court drew it, in effect, at a "small" amount. The small amount not constituting a nuisance, the rule of *State ex rel. Cowie v. La Crosse Theaters Co.* 232 Wis. 153, 286 N. W. 707, that private injury need not be shown, does not apply. Nor does the general rule announced in 39 Am. Jur. p. 425 apply that in a suit brought on behalf of the state to enjoin a public nuisance the presence of actual injury is not a prerequisite to maintenance of the suit. And a "slight" injury is "too slight for legal consequence." So held in a suit to enjoin erection of piling and a building thereon in violation of a city ordinance prohibiting such erection, which was in effect an action to abate a nuisance declared by the ordinance. *Janesville v. Carpenter,* 77 Wis. 288, 46 N. W. 128. So upon like reason of destruction of a "small" amount of fish. *"De minimis non curat lex."*

*By the Court.*—The judgment of the circuit court is affirmed.

FRITZ, J., dissents.