LUENING and another, Petitioners, vs. PUBLIC SERVICE COMMISSION and another, Defendants and Respondents: THE STATE, Intervening Petitioner and Appellant.

*September 10—October 5, 1954.*

538

For the appellant there was a brief by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, and oral argument by *Mr. Tulane.*

For the respondent Public Service Commission there was a brief and oral argument by *William E. Torkelson,* chief counsel.

For the respondent Winter Electric Light & Power Company there was a brief by *Glen H. Bell* and *Charles P. Seibold,* both of Madison, and *Douglas & Omernik* of Spooner, and oral argument by *Mr. Bell.*

GEHL, J.   The attorney general contends that the dam which the commission may grant authority to build is limited

to the structure directly across the river bed; that it is with-out power to authorize the construction of the canal to carry the water from the head of the project through the generating plant and back to the river bed.

The authority of the commission to grant permits "to construct, operate, and maintain dams" is contained in sec. 31.04, Stats.

*State ex rel. Priegel v. Northern States Power Co.* 242 Wis. 345, 8 N. W. (2d) 350, controls and requires affirmance of the judgment. That action was brought to enjoin the operation of the Jim Falls power plant on the Chippewa river. It was contended that the operation constituted a violation of sec. 31.34, Stats., and was consequently a nuisance. The structure involved in that case was practically the same as that involved here. The applicable statutes, secs. 31.04, 31.05, 31.06 (3), 31.14 (1), and 31.34 then contained provisions identical with those still contained therein. Sec. 31.34 provides:

"FLOW OF WATER REGULATED. Each person, firm, or corporation maintaining a dam on any navigable stream shall pass at all times at least twenty-five per cent of the natural low flow of water of such stream, except as otherwise provided by law. This section, however, shall not apply to a plant or dam where the water is discharged directly into a lake, millpond, storage pond, or cranberry marsh, nor shall it apply to cases where in the opinion of the public service commission such minimum discharge is not necessary for the protection of fish life. . . ."

The court said in the *Priegel Case, supra* (p. 351) : ". . . the controversy involved is largely as to what comprises a dam within the meaning of sec. 31.34, Stats."

The attorney general contends that when the legislature enacted sec. 31.14, Stats., specifying the circumstances under which a diversion of water should be permitted, and omitted to authorize diversions for hydroelectric purposes, under the

maxim *"expressio unius est exclusio alterius,"* it expressed an intent to prohibit diversion for the latter purpose. As we have pointed out, it was that statute which the court considered in the *Priegel Case,* when it held that the meaning of the term "dam" is not limited to the structure directly across the river bed but includes the canal which carries the water through the generating plant and back to the river bed.

It is sought to distinguish the *Priegel Case* upon the ground that there the question of the authority of the commission to issue a permit was not involved. Be that as it may, it is unimportant because, after all, the real issue in that case was as it is here: What is meant by the word "dam" as it is used in the statutes?

It is provided by sec. 31.06 (3), Stats., that if after hearing "it shall appear that the construction, operation, or maintenance of the proposed dam will not materially obstruct existing navigation or violate other public rights and will not endanger life, health, or property, the commission shall so find and a permit is hereby granted to the applicant. . . ." The commission so found. The finding is attacked as not being supported by substantial evidence.

The finding has such support. There is testimony, for instance, by a resort owner in the neighborhood, the chairman of an association founded to promote the area here involved, that the dam did not interfere with boating; that the river rapids are "too tough" for canoeing; that when the water is high it is impossible to get under an existing bridge and when it is low the boulders in the river bed are struck. A witness called by the conservation commission testified that he had not fished in the vicinity because one could not catch any fish there and that he did not consider it a "canoeing river;" that he tried canoeing in 1924 and barely cleared the bridge; that he considered his life more valuable than trying to run a canoe down the river.

The contention is answered further by what the court says in the *Priegel Case* where the development was similar to that here involved, with a diversion canal which resulted in leaving the river bed bare for about 4,500 feet. Referring to another project, and in which case the commission had issued a permit for the construction of a dam, the court in language applicable here said (p. 352) :

"The old river bed was left by the works in practically the same situation as in the instant [*Priegel*] case. This was considered as not destroying the navigability of the river under the rule of *Dwinel v. Barnard*, 28 Me. 554, 562, wherein it is held that one who forms a new channel to conduct the waters of a navigable stream thereby authorizes the public to use the new channel for the purpose of navigation to which the old channel was used for or adapted to. Of like import are *Whisler v. Wilkinson*, 22 Wis. 572, and *Weatherby v. Meiklejohn*, 56 Wis. 73, 13 N. W. 697. Manifestly the instant canal is an improvement over the rapids in the river bed for boating, which is the only navigation the river is now adapted or subject to."

We do not construe sec. 31.05(1), Stats., which requires that an application for the permit to construct a dam shall set forth the name of the waters in or *across* which the dam is to be constructed, as requiring that the word "dam" be construed differently than it was in the *Priegel Case*. The statute does not purport to contain a definition. The only purpose of the provision is to require that the commission be apprised of the location of the proposed structure and the direction is contained in terse language adequate to make its meaning clear.

The word "across" as it is used in the statute is to be given no more effect than if the statute had provided that the petition set forth the name of the waters "at which" the dam is to be constructed.

*By the Court.*—Judgment affirmed.