## HARRINGTON VS. EDWARDS.

Raftsmen on navigable streams have no right to moor their rafts in such a manner as to deprive wharf owners of access to their wharfs.

Defendant, owning a vessel and a wharf upon a navigable stream, and finding a raft of lumber belonging to the plaintiff fastened in the stream so as to obstruct the approach of his vessel to his wharf, untied the raft, doing no unnecessary damage; and, not being in charge of any person, it floated away. *Held*, that he was not liable for the loss of the lumber.

In an action for damages in such a case, evidence of a custom of raftsmen to anchor their rafts regardless of the wishes or convenience of the proprietors of adjoining lands, was not admissible. Raftsmen cannot establish a custom among themselves which will override the common law rights of riparian owners.

One party to an action cannot object to the appearance of the opposite party by his attorney, on the ground that such attorney has not procured a license as such from the government of the United States.

APPEAL from the County Court for *Winnebago* County. The case is stated by the court.

*Augustus Haight*, for appellant.

*Whittemore & Weisbrod*, for respondent.

*By the Court*, DIXON, C. J. Action commenced before a justice of the peace of the county of Winnebago, for wrongfully untying and setting adrift some rafts of pine saw logs, the property of the plaintiff, which were secured upon the waters of the Fox river, a navigable stream, at the city of Oshkosh. Defense, that the defendant was a boatman, having boats and vessels which he used in the navigation of the river, and was possessed of a wharf adjacent thereto, at which he was accus-

tomed to load and unload his boats and vessels, and that on the day named in the complaint he was navigating the river with a schooner, the freight of which he wished to discharge at the wharf, and finding the rafts so fastened and afloat upon the water as entirely to obstruct the passage from the navigable channel to the wharf, he untied and set them loose in order to gain access to the wharf with the vessel. Upon trial in the county court, to which the cause had been taken by appeal, the defense, with the addition of some particulars not materially affecting the questions involved, such as that the rafts were attached to those of some other persons previously secured, which together completely blocked the way to the wharf; and that at the time they were fastened the wind was blowing with considerable severity, was fully made out by the plaintiff's witnesses, and the judge, upon motion, ordered a nonsuit. We think he was clearly right. The rafts were left without any person in charge, and the defendant untied them, doing no unnecessary damage. It is true they were liable to be carried down by the current, but that was not his fault. The right of the plaintiff was a public right, the same as pertains to every person using the river for the purpose of navigation—a right of passage to and fro with his rafts or other water craft, due regard being had to the rights of all others enjoying the same privilege. But he had no right to moor his rafts so as to prevent the defendant from going to and from his wharf, or so as seriously to interfere with the rights of the riparian proprietors, longer than was necessary for the safe and proper navigation of the river. These principles are well settled, and a lengthy discussion of them is deemed unnecessary.

Neither would it have been proper for the judge to have received evidence of the custom of raftsmen to anchor their rafts regardless of the wishes or convenience of the proprietors of adjoining lands. Raftsmen could not establish a custom among themselves which would override the common law rights of the riparian owners.

There was no error in overruling the defendant's objection to the appearance of the plaintiff's attorney, and the motion for a nonsuit made because the attorney had not paid for and procured an attorney's license from the government of the United States. The judge refused to investigate that matter, and he was quite right. It is the duty of the proper officers of the United States to see that the revenue is collected and the penalties for disobedience enforced, and not a matter which thus directly concerns the courts or jurisdictions of the state.

Judgment affirmed.