A. C. Conn Co. vs. Little Suamico Lumber Mfg. Co. and another.

THE A. C. CONN COMPANY, Appellant, vs. THE LITTLE SUAMICO LUMBER MANUFACTURING COMPANY and another, Respondents.

*October 17 — November 5, 1889.*

*(1) Navigable rivers: Floating logs and timber: Obstruction by riparian owner. (2, 3) Evidence.*

1. A dam built and maintained by a riparian owner, without legislative permission, in a stream navigable only for the floating of logs and timber, is not unlawful if it does not materially affect or abridge the beneficial use of the stream.
2. In an action to recover damages for the obstruction of a stream by a dam, the plaintiff having introduced evidence to show that the defendant constructed his dam improperly for the purpose of embarrassing the plaintiff, the defendant may show how his dam was constructed and how it compares with the works of the plaintiff on the same stream.
3. Testimony that a witness had made statements out of court as to material facts different from his testimony in court, is competent impeaching testimony.

APPEAL from the Circuit Court for *Fond du Lac* County. Action to recover damages for the obstruction of a navigable river and the consequent delay in the driving of the plaintiff's logs therein. The facts will sufficiently appear from the opinion. There was a verdict for the defendants, and from the judgment entered thereon the plaintiff appeals.

For the appellant there were separate briefs by *E. H. Ellis* and *Charles W. Felker*, and oral argument by *Mr. Ellis, Mr. Felker*, and *Wm. F. Vilas*. They contended, *inter alia*, that this river is one of the navigable waters leading into the St. Lawrence river which the state is bound to keep as common highways forever free to the people of the state and of the United States. *Att'y Gen. v. Eau Claire*, 37 Wis. 400; Ordinance of 1787, art. IV; Const.

art. IX, sec. 1; *Wis. R. Imp. Co. v. Lyons,* 30 Wis. 61. The rivers of this state capable of floating logs to mill or market are navigable public highways. *Whisler v. Wilkinson,* 22 Wis. 572; *Olson v. Merrill,* 42 id. 203; *Sellers v. Union L. Co.* 39 id. 525; *Cohn v. Wausau B. Co.* 47 id. 324; *Weatherby v. Meiklejohn,* 56 id. 73; Angell on Watercourses, sec. 537. The legislature has power to prohibit, and has prohibited, the erection of any dam, bridge, or other structure within or over any navigable stream which may obstruct or impede its free navigation. R. S. secs. 1596, 1598; *Wis. R. Imp. Co. v. Lyons,* 30 Wis. 61. The erection and maintenance of a dam across a navigable river at a point where it is navigable in fact, without legislative permission, is unlawful, whether it does or does not interfere with navigation. *Wis. R. Imp. Co. v. Lyons,* 30 Wis. 61; *Att'y Gen. v. Eau Claire,* 37 Wis. 400; *Arundel v. McCulloch,* 10 Mass. 70. A bridge or dam placed across a navigable river without legislative authority is a nuisance if it obstructs navigation. *Barnes v. Racine,* 4 Wis. 454; Angell on Watercourses, sec. 554, and note 2; *In re Eldred,* 46 Wis. 530; Angell on Highways, sec. 223. If a stream is navigable in fact a riparian owner has no right to obstruct it by a dam on his own premises. *Olson v. Merrill,* 42 Wis. 203; *Stevens Point B. Co. v. Reilly,* 46 id. 237. The right of navigation or floatage is paramount to the rights of riparian owners. Angell on Watercourses, sec. 554, note 2, and cases cited; Angell on Highways, sec. 56; Wood on Nuisances (ed. 1875), 618, sec. 588. Any unauthorized obstruction is a nuisance, even though the public is really benefited. Wood on Nuisances (ed. 1875), secs. 602-4, 607. Decisions in Maine are founded upon a statute which gives the riparian owner the right to build dams across navigable streams without legislative authority. *Veazie v. Dwinel,* 50 Me. 479-485.

For the respondents there was a brief by *Vroman & Sale,* and oral argument by *C. E. Vroman* and *Edw. S.*

*Bragg.* They argued, among other things, that the plaint-
iff has waived any right to complain of defendants' struct-
ure, if such right ever existed, and is estopped from main-
taining any action on account thereof. He has consented
to and continued to use the defendants' improvements for
his own advantage since they were built, and to use the
river, in which they are placed, in the customary manner
of its use for the past thirty years or more. *Erie R. Co.
v. D., L. & W. R. Co.* 21 N. J. Eq. 283, 289; Cases in
Equity, Abr. 522; *Sprague v. Steere,* 1 R. I. 259; *Trenton
Bank v. McKelway,* 8 N. J. Eq. 84, 96; *Raritan W. P. Co.
v. Veghte,* 21. id. 463; *Society, etc. v. Lehigh V. R. Co.* 32 id.
329; *Haight v. Proprietors,* 4 Wash. C. C. 601; *Sheldon v.
Rockwell,* 9 Wis. 166; *Pettibone v. La C. & M. R. Co.* 14
id. 443; *Crosby v. Smith,* 19 id. 449; *Cobb v. Smith,* 23 id.
261; Gould on Waters, secs. 527, 530–532, 554; *Leigh v.
Holt,* 5 Biss. 340. The plaintiff's right of floatage is not
paramount to defendants' right to build and maintain the
mill dam for the purposes for which it was constructed.
*Veazie v. Dwinel,* 50 Me. 479; *Davis v. Winslow,* 51 id.
264; *Lancey v. Clifford,* 54 id. 487; *Foster v. Searsport S.
& B. Co.* 79 id. 508; *Middleton v. Flat R. B. Co.* 27 Mich.
534; *Thunder Bay R. B. Co. v. Speechly,* 31 id. 344; *Buch-
anan v. Grand R. L. Co.* 48 id. 364; *Snow v. Parsons,* 28
Vt. 464; *Leigh v. Holt,* 5 Biss. 338; Gould on Waters, sec.
110. The mill dam was built in aid of navigation, and
served that purpose. In this, as in all other small streams,
the logs of the different owners are put in loose, and in
driving become intermingled. This necessitates sorting be-
fore each can get his own. Anyone owning logs in the
mass may stop it for a sufficient length of time to take out
his own. *Osborne v. Knife Falls B. Co.* 32 Minn. 412, 419;
*Watts v. Tittabawassee B. Co.* 52 Mich. 208; *Davis v. Wins-
low,* 51 Me. 264, 298; *Weise v. Smith,* 3 Oreg. 445. A
structure in aid of navigation is permitted. *Stevens Point*

A. C. Conn Co. vs. Little Suamico Lumber Mfg. Co. and another.

*B. Co. v. Reilly,* 46 Wis. 237; *Cohn v. Wausau B. Co.* 47 id. 314. The Ordinance of 1787 has no application. *Keator L. Co. v. St. Croix B. Co.* 72 Wis. 62, 80.

Cole, C. J. It is the undoubted policy of the state, as manifested in its legislation, to secure the use of all streams within its territorial limits which are navigable as public highways. In respect to meandered streams which were returned by the government surveyors as navigable, the legislature has declared them navigable so far as the same have been meandered, to the extent that no dam, bridge, or other obstruction shall be made in or over the same without legislative permission; but this does not restrict the power granted by law to towns, counties, or cities to construct bridges over such streams. Sec. 1596, R. S. This court has decided that it is the settled law of the state that streams of sufficient capacity to float logs to market are navigable; and it is not essential to the public easement that this capacity be continuous throughout the year, but it is sufficient that the stream have periods of navigable capacity, ordinarily recurring from year to year, and continuing long enough to make it useful as a highway. *Whisler v. Wilkinson,* 22 Wis. 572; *Sellers v. Union Lumbering Co.* 39 Wis. 525; *Olson v. Merrill,* 42 Wis. 203. The real test to determine whether the stream is a public highway is not the fact that it has been meandered and returned as navigable, but whether it is navigable in fact, capable of being used, and actually used, for floating lumber and logs and other products of the country to mill and market. If it is, it is then a public highway. So that where a stream is in fact usefully navigable in this manner, to use the language of one of plaintiff's counsel, all the rights of the public attach, and no obstruction can be placed therein without legislative permission.

But still it is obvious that it is not every obstruction

placed in a navigable stream which is a nuisance. A distinction may well be made between those streams which are capable of floating logs and timber only at certain periods, and then for a few days in times of freshet, and streams which are capable of more extended and constant navigation. It seems to us that in reason and common justice a distinction should be made in view of riparian rights. For if the right of floatage is paramount, so that no bridge or dam or other obstruction can be placed in or over the stream by the riparian owner, his use and enjoyment of his property are unnecessarily abridged and restricted. Suppose the riparian proprietor owns the land on both sides of the stream, and there is a water power which can be utilized and made valuable by means of a dam, can he not construct such dam, and utilize his power, providing he makes a reasonable provision for the passage of logs through his dam? Can he not build a bridge over the stream for the convenient passage from one part of his land to the other? The owner must not so obstruct the stream as to materially impair its usefulness for the purpose of navigation; but, if it only can be used for floating logs and timber, the riparian owner is bound not to obstruct its reasonable use for that purpose.

The rights of the riparian owner and of the public are both to be enjoyed with due regard to the existence and preservation of the other. The right of floatage of logs is not paramount in the sense that the using of the water by the riparian owner for machinery is unlawful so long as he does not materially or unreasonably interfere with the public right (*Morgan v. King*, 18 Barb. 277; Gould on Waters, § 110; *Harrington v. Edwards*, 17 Wis. 586); but he may use the stream and its banks for every purpose not inconsistent with the public use. Sec. 1598, R. S., seems to go on some such principle. It provides that every person who shall obstruct any navigable stream in any manner so as

to impair the free navigation thereof, or place in such stream or any tributary thereof any substance whatsoever so that the same may float in or into and obstruct any such stream or impede its free navigation, or construct or maintain, or aid in the construction or maintenance of, any boom not authorized by law in any such navigable stream, shall be liable to a penalty, etc. This plainly implies that an obstruction in a navigable stream which does not impair the free navigation thereof, though not authorized by law, is not a nuisance and unlawful. Dams, booms, mills, and bridges, even, may be constructed on some navigable streams in such a manner as not to seriously affect the navigation thereof or infringe upon the common right. To say, therefore, that there can be no obstruction or impediment whatsoever by the riparian owner in the use of the stream or its banks, would be in many cases to deny all valuable enjoyment of his property so situated. " There may be, and there must be, allowed of that which is common to all a reasonable use. . . . There may be a diminution in quantity, or a retardation or acceleration of the natural current, indispensable for the general and valuable use of the water, perfectly consistent with the existence of the common right. The diminution, retardation, or acceleration not positively and sensibly injurious by diminishing the value of the common right, is an implied element in the right of using the stream at all." STORY, J., in *Tyler v. Wilkinson*, 4 Mason, 397.

As we have shown, the general statute forbids the obstruction of a meandered stream without the permission of the legislature. But booms erected by riparian owners in the aid of navigation, through shoal water, far enough to reach actually navigable water, are not within the statute. Such do not obstruct the river, but aid the use thereof. *Stevens Point Boom Co. v. Reilly*, 46 Wis. 245; *Union Mill Co. v. Shores*, 66 Wis. 476. But we do not concur altogether

in the correctness of the proposition that it has been the settled policy of the state to make the waters capable of use for the transportation of logs and timber free from all obstruction, whether by riparian owners, mill-owners, or others, so as to put the right of navigation by floating logs paramount and superior to other uses, and to make riparian privileges entirely subordinate to the public easement. But the public right and that of the riparian owner may well co-exist and be enjoyed by a reasonable use of the stream. The owner has no right to "*materially obstruct the navigation of the stream*" (ch. 220, Laws of 1881), and to do so is a misdemeanor. But if the owner uses the stream in the qualified manner above indicated, the public cannot complain. These general remarks have been made in view of the charge of the circuit court, which will soon be considered, and which is criticised as being erroneous in many particulars.

The action is brought to recover damages sustained by the plaintiff by reason of the obstruction and delay in driving and floating its logs in the years 1878 and 1879. Both parties then had mills and dams on the stream, which is non-meandered, and these dams were erected without legislative authority. The facts and the law applicable to the case are clearly and ably presented by the learned circuit judge in his charge to the jury. The charge is lengthy, but it cannot be abridged without doing injustice to the views expressed by the circuit judge. The whole charge is instructive, and we think is correct in the propositions of law applicable to such streams as the one in question. The charge has been most vigorously criticised by plaintiff's counsel, and perhaps the best answer that can be made to the exceptions taken to it is to give the entire charge relating to the questions we have been considering. The court says:

"In order to show the capacity of this river the plaintiff

AUGUST TERM, 1889. 659

A. C. Conn Co. vs. Little Suamico Lumber Mfg. Co. and another.

has introduced testimony to show that logs could be driven down it in time of freshet, when there were no obstructions; while on the other hand the defendants introduced testimony tending to the contrary effect, claiming flood-dams were necessary to successfully drive logs down the stream, and that the mill dam, dividing piers, passage-way, and chute were not so constructed or operated as to unreasonably delay the running of plaintiff's logs at that place. Much evidence has been given as to the mode of getting logs through the defendants' mill-dam, the location of the dividing piers, formation of sand-bars, the chute or sluiceway in the dam, and the passage-way for logs from the dividing piers to the chute in the dam. Considerable testimony has been given on both sides as to the size, character, and capacity of the stream during the years 1878–79, as well as before and after those years; how drives were run, and the amount of business done and required to be done on the river in the years mentioned. The plaintiff having acquired the control of the Peters mill and dam in 1877, the use of the river for navigable purposes below Chase & Dickey's was confined to the floating, or attempting to float, logs of these parties to their respective mills. The instructions which the court will give you are plain, and, under the circumstances of this case, founded upon rules of law which, in justness and fairness, should be applied in determining whether the plaintiff is entitled to recover or not.

"It appears that during the years 1878–79, and for many years prior thereto, the plaintiff was the owner of a dam across the Little Suamico river, with a mill at the same place, used for the manufacture of lumber and shingles. A short distance above plaintiff's mill the defendants were the owners of a dam and mill used for similar purposes. Still further above, along the river and adjacent country, the parties owned pine lands, some owned separately and others

jointly by the parties. From these lands were cut logs, which were hauled to the river and placed in the bed of the stream, or on the banks, ready to be floated down the river to the mills when sufficient water could be obtained to accomplish that purpose. The river is so small and narrow and crooked that logs cannot be run down it in rafts, but must be driven down loose, so that when both parties were logging and using the river at the same time the logs must, to some extent, become intermingled. While the river may not be navigable in the largest and most extended sense of the term, yet it is alleged in the complaint, and admitted in the answer, that the stream was, at the commencement of the action and for more than twenty years prior thereto, a public navigable stream for the floatage of logs from the upper part of it to different places along and near the mouth of the river, where such logs were manufactured into lumber and shingles. The fact that the stream was not meandered will not deprive it of its floatable character, as just stated, or deprive the plaintiff or public of using it as a floatable stream. It is alleged in the complaint, and there is some evidence tending to show, that logs can only be floated down the stream to defendants' mill pond by the use of flooding-dams at different points along the stream, unless it be during freshets and floods.

" It appears that, some years before the time complained of, Chase & Dickey's dam and Peters' dam were constructed and used by the owners for the storage of their logs, and were also used by the plaintiff and others as flooding-dams in floating logs below that point down the stream. Later the defendant constructed across the river above Peters' dam what is known and called as '*Eldred's* big dam,' and in the fall of 1878 the defendant constructed what is called the 'little dam,' between the big pond and Chase & Dickey's dam. But, as the most serious complaint is made of *Eldred's* big dam as an obstruction and cause of delay, the law ap-

plicable to such a structure will be stated, as the same rule will apply to both dams alike. It is alleged in the complaint, and admitted by the defense, that the defendants built the three dams; and, even if the plaintiff consented to the building of the big dam, or repaired it afterwards, that would not prevent the plaintiff from recovering for damages, if it was in fact an obstruction and damages resulted to the plaintiff therefrom; but such consent, if given, or repairs, if made, may be considered with the other testimony as to whether the big dam was in fact an obstruction or not. The plaintiff claims that the big dam was an obstruction to the floatage of logs down the stream, and that in the years 1878 and 1879, it was greatly hindered and delayed in running its logs down the river to the mill below in consequence of the dam, pond of water, and sandbars thereby created. On the other hand, the defendants contend that, instead of being an obstruction, the big dam substantially improves and aids the floatage of logs down the stream, rendering its use much more available and beneficial than before, and that without such dam the logs would become jammed up in the river, without sufficient water to drive them along; that the logs would remain hung up along the river, and render the means of getting them down more uncertain and expensive.

"The defendants, being joint owners with the plaintiff of the land on both sides of the river, had a lawful right to erect a dam; had a right to erect the big dam, providing they so built and maintained it as not to materially delay or obstruct the plaintiff and others in floating their logs down the stream. But the defendants had no right to build a dam that would impair the value of the stream for floating logs; and if the dam materially impaired the beneficial use of the river for floating purposes, and the plaintiff has been materially delayed in getting down its logs to defendants' mill, or its mill remained idle in consequence

thereof during the years stated, the defendants are liable for the damages they have occasioned. The dam was built and used for flooding purposes. It is not claimed that plaintiff was denied the use of it at any time, and there is no ground of complaint in that respect; therefore, if the dam is a nuisance which caused special injury to the plaintiff, it arose out of the manner the dam was built and maintained, and its effect upon the floatable character of the stream. In case the dam materially obstructed and delayed the plaintiff in running down logs in the years complained of, it can recover the damages directly arising from such delay; but if, by the aid of such dam, the plaintiff could run its logs down as quick or quicker, without greater expense, and make as clean or cleaner drive than it could without the dam, then the dam cannot be considered a nuisance or obstruction. The question does not relate simply to the time occupied in driving logs through the pond, but whether the whole drive, from the place where the logs were placed in the river to the defendants' mill, has been delayed by the dam; for, although more time may be taken to put logs through the pond than over the same length of space in the river before, yet if by the use of the dam for floods the drive is accelerated below to an equal or greater period of time than occupied in getting through the pond, no time is lost and no delay occasioned. The real test is, Was the river made less beneficial and available to the plaintiff in the years stated, for getting down its logs, in consequence of this dam? If it was, the plaintiff can recover for the injuries directly resulting from any delay produced thereby. If the dam, however, made the use of the stream beneficial and available to the plaintiff, furnished equal or greater facilities for floating logs than before its erection, so that logs could be driven down with equal or greater speed than before, more certainty of making a clean drive, getting logs when wanted for use, and without greater

expense, the dam cannot be held an obstruction or a nuisance.

"To determine whether the plaintiff was obstructed or not by the dam, beyond what it would without the dam, the size, character, and capacity of the stream must be taken into consideration, as well as the business required to be done upon it by the persons entitled to use it as a common passage-way for floating logs to the different mills on the stream below, and the quantity of logs put into the river to be run down during the two years named. The variable character of the weather for wetness or dryness during the different seasons of the year, and in the different years, may be taken into consideration with the other testimony in determining whether the big dam was an obstruction or nuisance, or an available and beneficial assistance to the plaintiff and others in floating logs to mills further down the stream.

"The next question to be considered is whether the plaintiff has sustained injury by reason, as it is claimed, that the dividing piers in the defendants' mill pond were placed too near the head of the pond, and that a sufficient passage-way and sluice was not provided by the defendants through its pond and dam for the passage of logs belonging to the plaintiff. The defendants' mill dam was not an unlawful structure; the defendants had a right to build and maintain it under certain restrictions. The plaintiff had no superior right to the use of the river over the defendants. Their rights were equal, so far as the floatage was concerned; and their rights to floatage and maintenance of mill dams were to be exercised with due regard to the rights of each other. If the plaintiff could have had the exclusive use of the river, it would not have been delayed by the defendants' mill dam. The dam was not an advantage to the plaintiff, but a detriment to it necessarily; but the river was common to the use of both parties and others

desiring to use it. It can only be used for floating loose logs, and these parties used it in that way during the years complained of, and for some time prior thereto. The result of such use is that the logs of the parties were necessarily intermingled. As respects the right to use the river the parties stand on the same footing. Unless the mass of intermingled logs could be stopped at the proper place, so as to enable the defendants to separate their logs from the plaintiff's logs, they are virtually denied the use of the river, and, in fact, no one could use it to advantage except those whose logs run to the end of the river. During these two years the plaintiff and defendants were the only parties who used this part of the river for the floatage of logs. The mass of intermingled logs belonged to the parties to this suit. I consider that the defendants had the right to build a saw-mill on their own land on the bank of the river, and saw up their logs there at that point. To render practicable the enjoyment,— the common use of the river,— the defendants possessed the right of stoppage of its intermingled logs by the erection of a dam and dividing piers for the assortment of logs, and for the storage of defendants' logs for immediate use at their mill; but the provision for stoppage and dividing of logs must be such as will preserve and secure the rights of the plaintiff as well as those of the defendants. Each party at this point is entitled to a reasonable use of the water of the river, both for dividing their logs, and defendants for booming their own after division for use at the mill, and the plaintiff for the passage of its logs through the pond and dam to their mill below. The plaintiff has the right to use the waters for the floatage of logs, but that right is to be so regulated as not to unnecessarily and unreasonably interfere with the rights of the defendants. The defendants have the right to use the waters for dividing piers and booms so long, and in such a manner, as not unnecessarily and unreasonably to interfere

with the rights of floatage. The plaintiff has no rights which are paramount to those of the defendants, nor have the defendants the right to monopolize the stream to the prejudice of the plaintiff's floatage. Each right modifies the other, and may, perhaps, render it less available, but this fact, if the enjoyment of the right is in itself reasonable and considerate, can furnish no ground of complaint.

" If the dividing piers, passage-way, and sluice in the defendants' dam were so located, opened, and constructed as to afford sufficient provision and reasonable facilities for the plaintiff to pass its logs through to the mill below without unnecessary and unreasonable delay and expense, the plaintiff cannot complain and cannot recover, although it may suffer some delay. In case the dividing piers are not properly located, and there is no sufficient passage-way for logs through the pond and dam, so as to obstruct the reasonable use of the water by the plaintiff for the floatage, and the plaintiff was thereby delayed in the years complained of in getting down its logs beyond what it would have been by the proper locating of the dividing piers and passage-way for logs, the defendants are liable for the loss and damage, if any, caused directly by the additional delay to the plaintiff, and sustained by it. This question is to be determined from the size, capacity, and character of the stream, and business required to be done upon it, and from all the facts and circumstances shown by the testimony bearing directly upon this question. Although the plaintiff's own dam made an obstruction to those floating logs below it, that would be no justification to the defendants to maintain an obstruction in the river above that point, and is no defense, even if it caused delay to the defendants at other times. The plaintiff and the defendants had equal rights in the Little Suamico for the purpose of logging and running their logs upon the waters of the stream to their places of manufacture respectively. Neither could exclude

A. C. Conn Co. vs. Little Suamico Lumber Mfg. Co. and another.

the other from the enjoyment of the use of said stream for the purpose stated, but each of the parties were bound to pay such respect to the rights of the other, in the construction of his dams, chutes for sluicing, race-ways, booms, dividing piers, and management of his logs, as not to unreasonably delay or increase the expense of the operations of the others. It is a fair participation and a reasonable use by each that the law seeks to protect. Such interruption in the flow of the water, either by dams, piers, booms, ponds, sluiceways, and chutes for sluicing, as is reasonable and unavoidable by the reasonable and proper use of the mill of the defendants, and consistent with a like reasonable and proper use by the plaintiff and the public, cannot be the subject of an action. There must be allowed a reasonable use to each of the water which is common to all. And if the jury shall find from the evidence that the damages alleged to have been sustained by the plaintiff were natural incidents to the reasonable and proper use of the waters of the stream by the defendants, and not the result of any unwarrantable or unreasonable interference with the stream or its waters, or in its use, they will find for the defendants.

"It is stated in the complaint, and must be taken as true for the purposes of this action: 'The said river, just above the said pond of the defendant, is a small and narrow stream, and logs can be brought down to said pond only by creating large ponds of water by means of dams located at different points along said stream, and the capacity of said dams and stream is such that said floods can only last for a few hours at a time.' It is only undisputed that the stream is a small one. The defendant had a right to construct his mill and dam, and, as incident to such right, was authorized to create a place for the storing of his logs, so that his mill could be made available for the manufacture of the logs into lumber. He had also the right to erect suitable dividing piers to separate his logs from the common

mass,— composed of his logs and the plaintiff's,— as it is conceded there was a general intermingling of these logs on every freshet or artificial flood, but, in the exercise of these rights, it was the duty of the defendant to make a reasonable provision for the plaintiff to get its logs through the pond created by his dam, and over his dam, without unreasonable expense, hindrance, or delay; and it was also his duty to so locate his dividing piers as not to unnecessarily hinder or delay the passage of the plaintiff's logs, or to create obstructions in the stream not necessarily incident to the existence of dividing piers.

"If you should find from the evidence that the defendant fulfilled his duty in the several respects that I have mentioned, then whatever damages the plaintiff may have sustained are a mere incident to the reasonable enjoyment of a common right by the defendants, and the plaintiff cannot recover upon that part of the case, based upon the construction of the mill dam, the creation of the mill pond, the construction of the sluice, the backwater in the pond, and the location and construction of the dividing piers. If the 'big dam,' so-called, was a necessity to make such floods as were required to successfully carry on logging operations and log driving on the stream, as an aid to the navigability or floatage power of the stream, or if it was a necessity to furnish the necessary water for dividing purposes, to enable the defendant and the plaintiff to separate their respective logs with more certainty and less delay, and at largely decreased expense, and the jury shall find from the evidence that such dam was so constructed as to perform the offices for which it was required, without any unnecessary or unreasonable delay or hindrance to the plaintiff in the reasonable enjoyment of its rights in the stream in common with the reasonable enjoyment thereof by the defendant, then the jury will award no damages to the plaintiff by reason of the 'big dam,' so-called.

A. C. Conn Co. vs. Little Suamico Lumber Mfg. Co. and another.

" If the 'little dam,' so-called, was the result of a necessity to flood logs on the stream to the mills of the respective owners having logs on the stream, or if the little dam was an aid to the navigation or floatable power of the stream, and was constructed as a matter of necessity to make such stream floatable, and an emergency existed requiring its construction,— in either of these cases if the jury shall find that this little dam was an aid and benefit, and not a hindrance, to the plaintiff in the reasonable enjoyment of the stream, in common with a reasonable enjoyment of it by the defendant, the jury will award no damages by reason of this dam to the plaintiff.

" If all of these issues are found by you in favor of the defendant, there will be nothing further for you to consider, but you will render a general verdict for the defendant. If you shall find a verdict for the defendant, that, of course, will be the end of your labors, and it will be unnecessary for you to consider the question of damages.

" In case you find the plaintiff, however, is entitled to recover, you are to ascertain and determine what damages, if any, it has sustained in consequence of the acts of the defendants in the years 1878 and 1879, in consequence of delays in bringing down its logs. If the plaintiff was not obstructed or delayed by the big or little dam, no damages can be given for delays at either of those points. If the plaintiff was not unnecessarily and unreasonably delayed in passing through the defendants' mill pond and dam no damages ensued thereby, and no recovery can be had on that ground. But in case you find that delays were caused by any or all of the dams,— if you find them to be obstructions,— the plaintiff is entitled to recover such additional cost and expense, if any, in making the drive and bringing down its logs, over what it would have cost to make the drive without the obstructions. If the plaintiff is entitled to recover, and the plaintiff's mill remained idle for want

of logs in consequence of delay in getting the logs down by reason of obstructions, then the plaintiff is entitled to recover what the use of the mill was reasonably worth during the time it was necessarily kept idle in consequence of the delay occasioned by the obstructions, and for that time only. In case you find the defendants are liable, and the plaintiff entitled to recover damages, no abatement or deduction from such damages can be allowed to defendants for cost or expense of building dams or other structures in the river. The burden of proof rests upon the plaintiff to show, by a preponderance of evidence, that the defendants' dams were obstructions in the river which caused the plaintiff to sustain damages in consequence thereof, before it is entitled to recover in this action; and, if the plaintiff has not done so by a preponderance of the evidence, it must fail in the action, and your verdict should be for the defendants."

It will be seen that the court held that the obstructions were not unlawful if they did not materially impair the value of the stream for floating purposes. If the beneficial use of the river was not materially affected or abridged by them, neither the public nor the plaintiff had any just ground to complain of their existence. This is in accord with the views which we have expressed upon the law applicable to the case. Nor do we think the decision in *Olson v. Merrill*, 42 Wis. 203, is in conflict with these views. That was an action like this, brought to recover damages sustained by the plaintiff by reason of obstructions in a stream used for floating logs. The alleged obstruction was the defendant's dam. The question litigated in the case was whether the stream was navigable for floating logs. The trial court charged that if the stream was navigable, and the defendant had provided a convenient and suitable passage-way through the dam for logs for the use of the public who might have occasion to flood logs past that

point to places below, then the plaintiff could not recover. The jury must have necessarily found from the evidence that the dam was an obstruction, and that the defendant had failed to make suitable and convenient provision for the passage of logs through it; and, as a consequence, the plaintiff had sustained damage by the obstruction. If it had appeared that a reasonable and proper passage-way had been made, so that its beneficial use was not materially affected by it, the learned chief justice might have used the language which he did in the subsequent case of *Stevens Point Boom Co. v. Reilly*, 44 Wis. 305: "In such streams proper booms and like works to aid in floating logs to market serve the like purpose, and stand for and in the same right, and subject to like limitations, as the piers and wharves on waters generally navigable, spoken of in *Diedrich v. N. W. U. R. Co.* [42 Wis. 248.]"

It seems to us the questions of fact on the issues presented were fairly submitted to the jury, and that the jury must have found that the alleged obstructions did not materially impair the beneficial use of the stream for floating logs, and that the plaintiff had sustained no injury by them.

It is insisted that the court erred in admitting testimony offered by the defendants. Witnesses were asked how the plaintiff's dam, race-way, and booms were constructed, and how they compared with the defendants' race-way, pond, and chute. There had been some testimony on the part of the plaintiff to the effect that the defendant *Eldred* had said to some men working for him that he would drive Conn off the river, implying that he entertained ill feeling and malice towards him and had erected his dividing piers and chute improperly so as to embarrass the plaintiff in its operations. The evidence offered was intended to rebut any presumption of malice or ill feeling on the part of *Eldred* in constructing these appliances in the manner they

A. C. Conn Co. vs. Little Suamico Lumber Mfg. Co. and another.

were constructed. We think the evidence was competent for that purpose, and that it was not error to admit it.

There was no error in refusing to strike out the testimony of the witness Bender as to the conversation between Vroman and the plaintiff's witness, J. Lucia. That was competent impeaching testimony. It tended to show that the witness Lucia had made statements out of court as to material facts different from his testimony as to those facts in court. We suppose Bender might refresh his recollection as to what Lucia said in the conversation with Vroman by referring to his notes or the memorandum of that conversation. The point seems too plain for discussion.

We have noticed all the more material questions discussed on the argument, and conclude our remarks upon the case by saying we perceive no ground for reversing the judgment.

*By the Court.*— Judgment affirmed.