THE STATE, Appellant, vs. CARPENTER, Respondent.

*January 14 — February 1, 1887.*

*Navigable river: Obstruction: Injunction.*

Rock river in this state is a public, navigable river, which it is unlawful to obstruct. But it appearing that the navigation of the river at Janesville has long been abandoned, and that the stream there is already so filled with obstructions by dams and bridges that it is not navigable in fact, the erection of a building in the river at that place, which would not materially obstruct or abridge the use of the river for navigation if such use were needed, will not be restrained at the suit of the attorney general.

APPEAL from the Circuit Court for *Waukesha* County. The case is stated in the opinion.

For the appellant there was a brief signed by *A. A. Jackson*, of counsel; one signed by *William Ruger* and *Fethers, Jeffris & Smith*, of counsel; and one signed by the *Attorney General*, and by *William Ruger, Fethers, Jeffris & Smith*,

and *A. A. Jackson*, of counsel; and the cause was argued orally by *Mr. Jackson* and *Mr. Fethers*. They contended, *inter alia*, that the river being a navigable river and a public highway, the respondent has no right to place an obstruction therein without the consent of the legislature. R. S. secs. 1596, 1598; *Jones v. Pettibone*, 2 Wis. 308, 318; *Wis. R. Imp. Co. v. Lyons*, 30 id. 61, 65–67. Any obstruction placed in such a river would be a public nuisance; and the creation of such a nuisance may be prevented by injunction. *Walker v. Shepardson*, 2 Wis. 384, 395–6; *S. C.* 4 id. 486, 511; *Barnes v. Racine*, id. 454, 465–6; *Yates v. Judd*, 18 id. 118, 127–8; *Enos v. Hamilton*, 24 id. 658; *Neff v. Paddock*, 26 id. 546, 552; *Potter v. Menasha*, 30 id. 492; *Stevens Point Boom Co. v. Reilly*, 46 id. 237, 243; Wood on Nuisances, sec. 484; *Williams v. Smith*, 22 Wis. 594, 601; *Wis. R. Imp. Co. v. Lyons*, 30 id. 61, 67; *Att'y Gen. v. Eau Claire*, 37 id. 400; *Pettibone v. Hamilton*, 40 id. 402, 416. The placing of an obstruction in a navigable stream so as to impede the navigation thereof is a public wrong, and the attorney general may maintain an action in the name of the state to restrain such public wrong. *State v. St. Croix Boom Corp.* 60 Wis. 565, 570; *Att'y Gen. v. Railroad Cos.* 35 id. 425, 529; *Att'y Gen. v. Eau Claire*, 37 id. 400.

Rock river being navigable as a matter of law, it is unimportant in this case whether it is navigable in fact or not. But it is navigable in fact. *Whisler v. Wilkinson*, 22 Wis. 576; *Sellers v. Union Lumbering Co.* 39 id. 525; *Olson v. Merrill*, 42 id. 203; *Cohn v. Wausau Boom Co.* 47 id. 324; *Weatherby v. Meiklejohn*, 56 id. 76. It is not necessary that a river should be navigable at all times, or even the greater part of the year, to sustain its character as navigable. *L. R. M. & T. R. Co. v. Brooks*, 39 Ark. 403; *S. C.* 43 Am. Rep. 277–279; *Olson v. Merrill*, 42 Wis. 203; *Morgan v. King*, 35 N. Y. 454–459; *Shaw v. Oswego Iron Co.* 10 Oregon, 371; *S. C.* 45 Am. Rep. 146–154; 31 Mich. 336–343; 72 Ala.

456–459. Nor is it essential that it shall be navigable continuously throughout its whole length. *Brown v. Chadbourn*, 31 Me. 9, 25. It is claimed that the navigation in Rock river is interrupted by dams and bridges. But if the river was in its natural state a navigable stream, the placing of unlawful obstructions in it would not deprive it of its navigable character. Nor will the fact that a navigable stream has not been used by the public deprive it of its navigable or public character.

It is insisted by the respondent that if Rock river was ever navigable in fact the state has destroyed its navigable character by authorizing the construction of dams and bridges across it, and that the state is now estopped from claiming that the river is a navigable stream. An examination of the various acts of the legislature authorizing the construction of such dams and bridges will show that this claim is wholly without foundation and that in nearly every act the navigable character of the river is recognized and protected. As to dams, see Laws of 1839, No. 45, p. 83; Laws of 1839, No. 49, p. 98; Laws of 1841, No. 69, p. 143; Laws of 1842, p. 9; Laws of 1843, pp. 25, 34; Laws of 1844, p. 36; Laws of 1845, p. 99; Laws of 1847, p. 16; Laws of 1848, p. 13; Laws of 1849, ch. 78; Laws of 1850, ch. 94. As to bridges, see Laws of 1842, pp. 53, 55, 80; Laws of 1845, pp. 105, 106; P. & L. Laws of 1855, ch. 71; P. & L. Laws of 1856, ch. 263; Laws of 1881, ch. 70; Laws of 1883, ch. 67. The legislature has also recognized and attempted to protect the navigable character of Rock river, in the charter of the city of Janesville. P. & L. Laws of 1857, ch. 372, secs. 1, 2; P. & L. Laws of 1858, ch. 108, subch. 4, sec. 4, subd. 36, and sec. 16; P. & L. Laws of 1866, ch. 474, subch. 4, sec. 4, subd. 36, and sec. 16; Laws of 1882, ch. 221. By the Ordinance of 1787, the constitution, and the statutes it was settled as the law of the land that Rock

river was a navigable stream and could not be obstructed. Every act of the legislature authorizing a bridge or dam across the river must be construed accordingly, and so far as it attempted to authorize an erection which would destroy or seriously obstruct the navigation of the river it would be void. The navigable character of the river having been fixed by the Ordinance, the legislature cannot by anything that it may do or fail to do, destroy such character. *Cox v. State*, 3 Blackf. 193–6; *Hogg v. Zanesville C. & M. Co.* 5 Ohio, 410; *Spooner v. McConnell*, 1 McLean, 337; *Wis. R. Imp. Co. v. Lyons*, 30 Wis. 61–66; *Att'y Gen. v. Eau Claire*, 37 id. 400–446; *Sweeney v. C., M. & St. P. R. Co.* 60 id. 60–67. The mill-dams and bridges across Rock river are for a public use, and such public use is in entire harmony with the public use of the river as a highway. The construction of a dam or bridge across the river under an act of the legislature, in an unlawful manner or in a manner not authorized by the act, cannot be construed into an abandonment by the state of the navigable character of the river. Such a dam or bridge would be a nuisance, and could be removed in a proper proceeding. If the state has so far acquiesced in the continuance of an unlawful dam or bridge as to estop it from proceedings to remove the same, such estoppel will not protect the respondent in his effort to place in the river another and different unlawful obstruction. But the state is not estopped from removing any nuisance whenever discovered, no matter how long it has continued. *Rochester v. Erickson*, 46 Barb. 92; *Mills v. Hall*, 9 Wend. 315; *Wright v. Moore*, 38 Ala. 593; *Comm. v. Upton*, 6 Gray, 473; *Stoughton v. Baker*, 4 Mass. 522; *People v. Cunningham*, 1 Denio, 524, 536; *Renwick v. Morris*, 3 Hill, 621, 623.

The amount of navigation and the extent of the obstruction are not to be considered. If the building will be an

obstruction to any extent it will be an unlawful obstruction. *Wis. R. Imp. Co. v. Lyons*, 30 Wis. 61–67; *Att'y Gen. v. Eau Claire*, 37 id. 400, 447.

The respondent claims to be the owner of 40 by 100 feet of land in the bed of the river. He does not claim to own any land on the bank of the river. He is not therefore a riparian owner, and possesses none of the rights called riparian rights. Gould on Waters, sec. 148; *Mariner v. Schulte*, 13 Wis. 692; *Chapman v. O. & M. R. R. Co.* 33 id. 629; *Delaplaine v. C. & N. W. R. Co.* 42 id. 214; *Diedrich v. N. W. U. R. Co.* id. 248, 264.

*Edward M. Hyzer*, for the respondent.

Orton, J. This is a bill or information of the attorney general against the defendant praying for an injunction to restrain him from driving piles within the channel and low-water mark of Rock river, within the city of Janesville, as a foundation for the construction thereon of a large building 40 by 100 feet, which he threatens, and which, when so constructed, and the interruption of said river for the purpose of navigation caused thereby, "*will cause great public inconvenience, mischief, and damage*," and " interrupt and prevent the free use and enjoyment of the waters of said river for the purpose of navigation, and *will cause great, irreparable*, and *permanent injury in that regard.*" It is alleged that " said river *is navigable in fact* for steamboats, barges, timber, lumber, rafts, and other water-craft, and for the purpose of floating productions and manufactured articles to market, and for the people of the county to travel upon for profit or pleasure, and is so navigable in said county and city at the particular place " where the defendant threatens to erect said building therein, and that the defendant has no lawful authority to erect said building in such place. A preliminary injunction was granted by a court commissioner on said complaint and affidavits in support thereof, which,

on answer and affidavits in support thereof, was dissolved by the circuit court, and from the order dissolving the same this appeal is taken.

It appears that the building so threatened to be constructed will occupy that portion of·a lot in the city of Janesville, within said river, belonging to said defendant by conveyance of the owner of the lot, and situated between two bridges over said river, built upon piles, and without draw or swing and within forty rods of each other, and in the vicinity of a building in the center of said river; that dams and bridges span said river within said city in many places, which prevent the use of said river for navigation, and many buildings have been built out into said river from adjacent lots, by the owners thereof, and that such obstructions have existed for a great many years; and that practically and in fact said river has not been and could not be used for navigation, and that there has been no necessity or need for such an use of said river during a very long time past; and that the construction of said building would not. materially obstruct or abridge such use if required, because a sufficient channel and space of said river would thereafter remain for such purpose. It does not appear that the public or any one needs or requires, or that any exigency demands, the use of said river within said city for the legitimate purposes of navigation at this time.

These facts, which sufficiently appear in the record, would seem to negative the allegations of the complaint that said building would " cause great public inconvenience, mischief and damage," and " great, irreparable, and permanent injury," by the interruption of the navigation of said river. Outside the record, we may take judicial knowledge that said river, for a great many years, within cities and villages and in other places, has been obstructed by mill-dams, bridges, and buildings, in a similar manner, through this. state and the state of Illinois, and that said river has not

been practically and in fact navigable or used, needed, or required for navigation in the way of transportation or travel. This being the condition of Rock river within the city of Janesville and elsewhere, was it an abuse of discretion for the circuit court to dissolve the injunction? Perhaps the question should be broader than this, in order to settle, for the time and under the present conditions, the question whether an injunction at the suit of the attorney general ought to have been granted or continued in such a case.

The legal proposition made and urged with great learning and ability by the learned counsel of the appellant, in respect to the navigability of Rock river, as far as the Ordinance of 1787, the constitution, and many laws of the state can make it so, is incontrovertible, and this court is bound to take judicial knowledge that it is a navigable stream and public river of this state; and that it is unlawful to obstruct it there can be no question. The public and all persons have the right to its free and unobstructed use for the purposes of navigation at all times and under all circumstances. There was a time, in the early settlement of the country bordering on this river, when it was practically and in fact navigable, and actually used to a limited extent for the floating of logs, and perhaps for small boats and barges. But since that region has been denuded of its forests, and other and better means for transportation have come into use, such practical use of the river has been entirely abandoned, and its waters have been exclusively used by riparian proprietors and for hydraulic purposes, and it has been spanned by highway and railway bridges and mill-dams in near proximity with each other throughout its entire course. We shall see that these considerations and conditions cannot be ignored in a case like the present one, where a court of equity is asked by the attorney general, on behalf of the public, for an injunction to restrain a single encroachment

upon the waters of this river, which at most will not much increase the obstructions which have for a long time existed to its technical and legal navigability.

In this state, at least, there is no such thing as *purpresture*, even in connection with its navigable waters, where the owner's title to the adjacent banks extends to the center of the stream and he is in most respects a riparian proprietor. Such an owner may use his marginal land in his own way, so that he does not obstruct, impede, or abridge the navigability of the river. His right is only subordinate to such public use. This has been so often decided by this court that the cases need not be cited. Such is not the common law, or the law of many of the states. Purpresture is based upon the title of the sovereign or of the state to the land or soil between high and low water mark of navigable waters, and was good cause for an injunction even when the encroachment was not a nuisance *per se* or by reason of obstructing navigation. 2 Story's Eq. Jur. sec. 922; *Blundell v. Catterall*, 5 Barn. & Ald. 268; *Attorney General v. Johnson*, 2 Wils. Ch. 101; *People v. St. Louis*, 5 Gilman, 367; Houck, Rivers, secs. 300–310; Ang. Watercourses, sec. 546. If the act was a purpresture, it was liable to be abated or restrained in equity as an invasion of the property of the crown or of the state. 1 High, Inj. sec. 760. In this case, then, an injunction could not have been granted on that ground, for the defendant had the right to use the shore as a riparian proprietor, if he did not thereby obstruct, impede, or abridge the navigability of the river. It was only on the ground that it threatened to be a public nuisance for that reason that it could be enjoined.

It seems that there have always been great doubts as to the interference by a court of equity to grant an injunction against a threatened public nuisance. Ang. Watercourses, sec. 566; *Attorney General v. Railroad & Transp. Co.* 3 N. J. Eq. 136. It is in cases of public nuisances requir-

ing *immediate* suppression that the chancery courts of the United States have jurisdiction. *Georgetown v. Canal Co.* 12 Pet. 91; *Rowe v. Granite Bridge Corp.* 21 Pick. 344. In other cases courts of law should be appealed to, when the facts can be passed upon by a jury. The jurisdiction of a court of equity to restrain public nuisances at the suit of the attorney general is one of great delicacy, and should not be exercised except to arrest *irreparable injury.* Ang. Highw. sec. 280. When the public owns not only the easement but the soil of rivers, and the nuisance is also a purpresture, this equitable relief will meet with greater favor. Id. sec. 282. But even then the threatened nuisance should be such as may injuriously *affect* or *endanger* the *public interest.* *Attorney General v. Cohoes Co.* 6 Paige, 133. "To warrant an injunction against a public nuisance, it must clearly appear that it is such *in fact;* and if it be doubtful the relief will not be granted, and the question as to the existence of the nuisance should be determined by a jury before it is granted." *Attorney General v. Cleaver,* 18 Ves. 217. A nuisance has been defined by this court to be " something which works *hurt, inconvenience,* or *damage.*" *Douglass v. State,* 4 Wis. 387. "Any act or obstruction which unnecessarily *incommodes* or *impedes* the lawful use of a highway by the public is a nuisance." Ang. Highw. sec. 223. "Where the injury complained of is not *per se* a nuisance, but may or not become so according to circumstances, and when it is *uncertain, indefinite,* or *contingent,* or productive of only *possible* injury, equity will not interfere." 1 High, Inj. sec. 742, and cases cited in note 4.

The nuisance does not consist in obstructing the river, but in obstructing *the use* of the river as a navigable stream by the public. The defendant may have no right whatever to erect a building in it that may obstruct the navigation of Rock river, and by doing so he may be technically guilty of a public wrong. But that is not the question. Where is

the immediate hurt, injury, inconvenience, or peril of the public, in this threatened construction, that a court of equity should be called upon to exercise this extraordinary and questionable jurisdiction to enjoin it? If completed as threatened, the public may not for many years, and probably never, suffer any injury or inconvenience from it. The river has not been navigable in fact, or navigated or used or needed for such purpose, for many years, and probably never will be again. The wrong and injury to the public, if any, are merely technical and nominal. Courts of chancery should not be called upon to exercise this high jurisdiction in a case where it is needless and useless, and a mere idle ceremony. *Cui bono?* In order to have the character of navigability, this river should be navigable in fact, or navigable to some purpose useful to trade or agriculture, and must be generally and commonly useful for such purpose, if courts are called upon to interfere to protect its navigability. Ang. Watercourses, sec. 544, and cases cited in note 2.

In *Attorney General v. Railroad & Transp. Co.*, *supra*, an injunction was denied, although the information charged "that great mischief and irreparable injury would ensue to the public by the erection of the bridge." Very similar allegations are made in this information, which, however, were negatived by the facts.

In 1 High, Inj. sec. 770, it is said in the text: "The only ground upon which the obstruction of a navigable creek can be enjoined is the hindrance to navigation; and where the stream is not *in fact navigated*, and has not been for many years, the injunction will be denied."

The case cited to this text is *Gilbert v. Morris Canal & Banking Co.* 8 N. J. Eq. 495. This case is very much in point. Mill creek is a tide river, and empties into the bay of New York, and in its natural state was navigable for lighters and vessels of fifty tons burthen quite a distance

up into New Jersey, and had public wharves or landings thereon. But for many years it had not been used for navigation, and bridges without draws had been built across it, and railroad embankments had filled it up in some places. The defendant threatened to make a canal across it, and the plaintiffs prayed for an injunction, on the ground that said canal would be a public nuisance by obstructing a navigable stream where the tide ebbed and flowed. The language of the opinion of the chancellor is so appropriate that I may be allowed to make a copious quotation of it: "The creek is large enough in width and depth of water, for useful purposes of navigation, if any such navigation were *wanted*, or would, with the present means of communication with New York, be ever used. . . . I cannot say that the shutting up of the creek would be a *public nuisance*, as obstructing *public navigation;* and this is the only ground on which this court could interpose. An individual may come into this court, if he is about to be injured by the creation of a public nuisance, for an injunction; but in this case it is evident that the *public* do not and would not use this creek for the purposes of navigation. There is a bridge over this creek without a draw, and has been for eleven years, and the public have taken no step to open it for navigation." This is the only case of similar facts I have been able to find, and probably is the only one that has come before the courts.

It is not probable that any one, much less the attorney general, would concern himself about a stream which has been so long abandoned for all purposes of navigation, and completely obstructed in so many places, and not needed or used for such purposes, and neither the public nor individuals have suffered any injury or inconvenience thereby. When any one in good faith shall have the means of using this river for the legitimate purposes of navigation, and shall desire to use the same for such purposes, it will be

time enough for him or the attorney general to complain; and the courts of law will afford, in such an exigency, an ample remedy. In the above case the stream was a tide river, and there was no more question of its being a navigable stream in the eye of the law than in the case of Rock river, and it had not been closed up by obstructions, and not used or needed for purposes of navigation, more than half the length of time. This, therefore, is much the stronger case for a denial of equitable relief.

We do not think that the circuit court abused its discretion in dissolving the injunction, and are inclined to hold that the information and the facts do not make a proper case for an injunction at the suit of the attorney general.

*By the Court.*— The order of the circuit court is affirmed.