PASCAGOULA BOOM COMPANY ET AL. *v.* JOHN IRA DIXON ET AL.

1. NAVIGABLE STREAM. *Riparian owner. Obstructions. Constitutional law. Constitution of 1890, sec. 81.*

   Under section 81, constitution of 1890, prohibiting the legislature from authorizing the permanent obstruction of navigable waters, but empowering it to permit the proper construction of bridges and "booms and chutes" for logs, a riparian owner, without legislative sanction, cannot rightfully maintain a boom for the stoppage of logs.

2. SAME. *Private suit. Mandatory injunction.*

   Private parties having a special interest are entitled to a mandatory injunction requiring the removal from navigable waters of an unlawful obstruction therein.

FROM the chancery court of Greene county.

HON. NATHAN C. HILL, Chancellor.

The Pascagoula Boom Company, a duly authorized common carrier of logs down the Pascagoula river, and others, were the complainants in the court below. Dixon, and others, who maintained the boom objected to, were defendants there. The decree of the court below from which the complainants appealed to the supreme court, was only in part in their favor. It enjoined defendants from consuming the logs of the complainants, but denied all other relief. The facts are sufficiently stated in the opinion of the court, but at the same time, that the full extent of the adjudication and the remedy may the bet-

ter be appreciated, the judgment rendered by the supreme court is given. It is as follows:

"This cause having been submitted on a former day of this court, and the court finding error to the prejudice of the appellants apparent of record, it is now considered and adjudged by the court that the final decree rendered in this cause by the court below, in so far as it was favorable to appellants, is affirmed, but in so far as it was adverse to the appellants, the same is hereby reversed. And this court further adjudges and decrees that the appellants, complainants in the court below, all of them, are entitled to relief other than that granted in the court below. And proceeding to decree such additional relief, it is now hereby adjudged that the boom, with its appurtenances, the obstructions placed in the Pascagoula river by defendants, Dixon & Co., as fully described in the pleadings in this cause, are and constitute a public nuisance, and as such should be abated and removed under the directions of the court below. To that end this cause is remanded to the chancery court of Greene county, with instructions to said court that it issue proper process, in the nature of a mandatory injunction, requiring the defendants, Dixon & Co., to remove said obstructions from the said river; and that the said chancery court by its proper officers see that the same are removed in a reasonable time, and retain jurisdiction of this cause to enforce this decree. It is further adjudged that the injunction heretofore issued in this cause was rightfully issued. It is further ordered, adjudged and decreed that the appellants do have and recover of and from the appellees, Dixon & Co., the costs of this cause in the court below and in this court, to be taxed, for all of which execution may issue."

*J. I. Ford, C. H. Wood* and *McWillie & Thompson,* for appellants.

The defendants have no right as riparian owners to occupy any portion of the river. We insist that it has always been the

policy of Mississippi, from her earliest history, to preserve inviolable the public right of navigation in all of the navigable streams, and that all streams capable of being used in any useful way by floating logs or other purposes, are public navigable streams. Heavy penalties were imposed upon masters of vessels and all other people engaged in navigating the public streams, for any sort of obstruction, or for throwing overboard anything capable of forming obstructions. Sec. 45, p. 361, Poindexter's Code. This provision, now found in § 1146 of the annotated code, 1892, has continued to be the law until this day. Not only was the obstruction of navigable waters forbidden by statute, but provisions were put in all of the constitutions forever prohibiting the legislature from passing laws authorizing the permanent obstruction of the streams. Section 81 of the present constitution provides that "the legislature shall never authorize the permanent obstruction of any of the navigable waters of this state, but may provide for the removal of such obstructions as now exist, whenever the public welfare demands. This section shall not prevent the construction, under proper authority, of drawbridges for railroads, or other roads, nor the construction of booms or chutes, in such manner as not to prevent the safe passage of vessels or logs, under regulations to be provided by law." This provision cannot be invoked in defense of this case because the legislature has wisely refrained from passing any law regulating how booms are to be constructed, and until it does enact such a law, an obstruction of any part of a public stream is violative of the existing statutes and is forbidden.

In the case of *Allee* v. *Northwestern Union Packet Company,* 21 Wallace, 389-398, the supreme court of the United States expressly declared that a pier built in the Mississippi river for the sole use of the riparian owner as a boom for sawlogs, without license or authority of any kind except such as may arise from the ownership of an adjacant shore, was an unlawful structure. To the same effect is the case of *People* v.

*City of St. Louis,* 48 Am. Dec., 343.   The courts in these deci-
sions distinguish between those cases where wharfs, piers, etc.,
are built in a city or town and under some sort of regulation
and authority, and cases where there were no regulations what-
ever, and held a small pier in the Mississippi river where it
is a half mile wide, an unlawful structure.   In the absence
of a law regulating the subject, the mere ownership of the ad-
jacent shore confers no property right that gives authority to
occupy any portion of a public stream.   The whole policy of the
law in this state is against such an idea, and the boom in con-
troversy, erected and maintained without authority of law, and
the operation of which, even prudently, inflicts damage upon
those navigating the stream, is an unlawful structure and should
be removed.   *Stevens Point Boom Co.* v. *Reilly,* 46 Wis.,
237; *Virgil* v. *Devinel,* 50 Me., 488; *McPheters* v. *Moose River
Boom Co.,* 78 Me., 333, 334.   Even if we be mistaken as to
the effect of our constitutional provision (which we insist set-
tles this case for appellants) yet the obstruction of a navigable
stream is governed by the same rule as that of a public road.
One may stop his carriage temporarily in the highway, he
may unload a wagon from the highway into his own premises,
and he may obstruct the whole highway temporarily to turn
his cattle into his own inclosure, but he cannot build an ob-
struction across a highway and force the public to go through
his field, nor can he build a fence across the highway, even if
he put a gate in it for the use of the public.   Gould on
Waters (2d ed.), sec. 95, p. 187; *Sherlock* v. *Bainbridge,* 41
Ind., 35; *Cary* v. *Daniels,* 8 Met., 478; *People* v. *Horton,* 64
N. Y., 610; 5 Hun, 516; *State* v. *Holman,* 29 Ark., 58; *State*
v. *Thompson,* 2 Strobh. L., 12; *Sawyer* v. *Eastern Steamboat
Company,* 46 Me.; *Rex* v. *Cross,* 3 Camp., 224; *Original, etc.,
Company* v. *Gibb,* L. R., 5 Ch. Div., 13; *Sturgeon River Boom
Company* v. *Nester,* 55 Mich., 113.

The bill makes a clear case of a public nuisance, from
which complainants are suffering an injury and damage dif-

ferent in kind from the public at large, and the proof amply sustains every allegation of the bill. It is true that a private individual cannot maintain a bill of this character, where the nuisance only affects him as a citizen of the state, and where the complaint is merely of the invasion by defendant of a right which he enjoys as a citizen, and may not desire to use; nor can a bill be maintained where the damage alleged is merely nominal, remote or speculative; but where the damage is actual and continuous in its nature, made so by the act of the defendant, and especially, as in this case, where the character of the damage is such that there can be no legal remedy, for want of a legal measure of damages, or where the action of the parties makes it impossible to discover all the facts so as to give full redress, there can be no question of the right of an individual to abate the nuisance. *Green* v. *Lake,* 54 Miss., 540; Gould on Waters (2d ed.), sec. 121, pp. 236, 237; *Mearkey* v. *Foster,* 25 Am. Rep., 534; *Carl* v. *West Aberdeen, etc., Co.,* 43 Pac. Rep., 890.

No counsel appeared in the supreme court for the appellee.

Argued orally by *T. A. McWillie,* for appellants.

TERRAL, J., delivered the opinion of the court.

The appellants, complainants below, sought a mandatory injunction against the defendants for the removal of a boom placed by them in the Pascagoula river, as a public nuisance, causing them special damage. This river is alleged in the bill and admitted in the answer to be a navigable stream for logs, rafts and boats; and it is admitted that for the purpose of improving the navigation the national government makes an annual appropriation.

At the point on the river where the obstruction complained of is located, the defendants, J. I. Dixon & Co., are the owners of the eastern bank of the river, and have a lease of the lands on the western side of the river, and so they are, in effect, the

owners, as respect to this controversy, of both banks of the river at that place.

They have erected a sawmill upon a cutoff, or dead river, which adjoins the river on the eastern side, and the dead river forms a receptacle for the safe-keeping of their logs. In order to stop these logs and to convey them into this dead river, they constructed a boom across the river from the one side to the other. A part of the boom is stationary, but there is a swinging boom near the centre of the stream five hundred feet long which is usually kept open, but which may be closed in cases of necessity.

There is also a swinging boom at the eastern or southern end of it, which permits of being opened and closed at the pleasure of the defendants, and which was constructed for the purpose of passing down the stream the logs of others, which accidentally or otherwise might be stopped by the main boom.

The defendants usually kept the main swing boom open, so that a large space near the center of the stream was left open for the passage of logs and rafts down the river; but when there was a freshet in the river, and there was a drive of the defendants' logs coming down the stream, it was necessary, in order to stop them all, to close the boom entirely, so that no logs could pass. When the river was not too high, the defendants kept the main swing boom only partly closed, and had employes stationed there to pass through all logs not their own; but in order to stop their own logs it was frequently necessary for the defendants to close the river entirely.

In some jurisdictions it is held that the riparian owners may make such erections upon his own land as his convenience or business may require, though navigation be inconvenienced thereby, provided it be not wholly obstructed. At common law, however, a navigable river is a public highway subject to public use, and the right of passage over it extends to all parts of the channel, and any obstruction of the channel is a public nuisance. *Williams* v. *Wilcox*, 35 E. C. L. R., 396-400; *Virgil*

v. *Devinel,* 50 Maine, 488; *Sherlock* v. *Bainbridge,* 41 Ind., 35; *Atlee* v. *Packet Company,* 2 Wall., 389; *Morgan* v. *Reading,* 3 Smed. & M., 366-406; *Comm'rs* v. *Withers,* 29 Miss., 21, 37. Section 81 of the state constitution embodies this principle of the common law as follows: "The legislature shall never authorize the permanent obstruction of any of the navigable waters of this state, but may provide for the removal of such obstructions as now exist, whenever the public welfare demands. This section shall not prevent the construction, under proper authority, of drawbridges for railroads, or other roads, nor the construction of 'booms and chutes' for logs in such manner as not to prevent the safe passage of vessels, or logs, under regulations to be provided by law."

The plain interpretation of this section of the constitution is that booms for logs which prevent the speedy passage of rafts and logs down the stream, must have legislative warrant for their existence before they can be constructed.

"All navigable waters are for the use of all the citizens, and there cannot lawfully be any exclusive private appropriation of any portion of them." Cooley Cons. Lim. (5th ed.), 728.

We are of the opinion that the boom of the defendants in the Pascagoula river is a public nuisance, and that the particular right of the complainants gives them a right to the remedy sought by them. *Hartford* v. *Bridge Co.,* 14 Conn., 565.

*Reversed.*