STATE, Appellant, vs. SUTHERLAND, Respondent.

*December 7, 1917—January 5, 1918.*

*Navigable streams: Title to bed: Qualified title of riparian owner: Obstructions: Nuisances: Abatement: State policy: Stare decisis: Rule of property: Vested rights: Buildings on piles in Rock river at Janesville: Taking of private property without compensation.*

1. Upon the organization of the several states the title to the beds of all streams navigable in fact vested in the states in trust for public purposes.

2. At common law a navigable stream was a public highway subject to public use, and the right of passage over it extended to all parts of the channel, and to abate an obstruction as a nuisance it was not necessary that the obstruction should actually have interfered with navigation; it was sufficient if it rendered it less convenient and less useful.

3. By the enactment of ch. 72, Laws 1853, as re-enacted and re-affirmed at various times, the legislature declared the policy of the state with reference to all streams included within its terms, and thereby gave to all the waters therein described the incidents of navigable streams at common law, so far as they were navigable in fact; and the distinction theretofore existing between tide and nontidal waters as to navigable character was abolished.

4. The title of a riparian owner on a navigable stream extends to the center or thread of the stream, but his title to the bed of the

stream is a qualified one and subject to the public right of navigation with all its incidents.

5. The right to maintain a navigable river free of all obstruction to navigation, as that term was understood at common law, is not inconsistent with such private ownership of the bed of the stream.

6. If the right of the public to have the public streams of the state kept free from obstruction has been modified to any extent, it has been so modified by the force and effect of a state policy; and this modification, if such it is, having been sanctioned by the courts and long adhered to, must, under the doctrine of *stare decisis*, be held to have established a rule of property, and at least so far as rights have accrued thereunder they will not be disturbed.

7. The decisions in *State v. Carpenter*, 68 Wis. 165, and *Janesville v. Carpenter*, 77 Wis. 288, to the effect that buildings standing upon piles driven into the bed of Rock river at Janesville, of substantially the same kind and extent as the building involved in this case, were, by reason of the peculiar circumstances found in connection therewith, structures which could not be abated as nuisances at the suit of the state or private parties, are adhered to and followed, for the protection of vested property rights.

8. Sec. 1596, Stats., as amended by ch. 652, Laws 1911, does not affect the rights of property owners, with respect to structures of the character mentioned and similarly situated, which had accrued before the enactment of said ch. 652. Such owners cannot be deprived of their property rights without just compensation.

APPEAL from a judgment of the circuit court for Rock county: CHESTER A. FOWLER, Judge. *Affirmed.*

Action brought by the attorney general to abate as a public nuisance a building standing on piles in the bed of Rock river at Janesville, Wisconsin. The complaint alleged that the defendant, without any authority or permission from the legislature, had erected in the bed of Rock river a building supported by piles and piers of concrete and stone and had filled in from the west bank of the river at the west end of the Milwaukee street bridge, and that the structures so erected constituted obstructions in the river, and set forth the fact at length that other structures had been erected therein

in like manner, the situation being shown by the map hereto attached.   The building sought to be abated is that marked

upon the map "Geo. Sutherland."   It is on the southerly side of Milwaukee street and near the westerly shore of Rock

river. The complaint alleged generally that the buildings were of frame construction, highly inflammable; that the maintenance of the piles, piers, walks, and other obstructions in the river interfered with navigation and constituted an obstruction to the use thereof, and that the maintenance of the same caused damage to the adjacent property owners and was a menace to the safety of the general public and constituted an unlawful obstruction and a general nuisance; that in June, 1913, a complaint was filed with the railroad commission, and that after due hearing the railroad commission filed its findings to the effect that the various structures constituted an obstruction to navigation and had a tendency to narrow the channel of the river; that the suit was begun by direction of the governor, and the prayer was for the abatement of the buildings constructed by the defendant and for an injunction restraining him from constructing or maintaining any building or other obstruction in said river. The defendant answered, admitted ownership of the building, and denied that any part of it was in the bed of said Rock river and in the navigable portion thereof; alleged that the river at the point in question had never been a navigable stream; alleged that in 1890 the defendant purchased the lands described in the complaint, and, relying upon decisions of courts of competent jurisdiction to the effect that the property could be used for business purposes and that the premises were not a part of the public way and were not navigable in fact, buildings were so erected as not to in any way interfere with the flow of any water on said premises or to interfere with the right of any person to fish or to use said waters for hydraulic or other purposes; alleged that the filling in question was a boundary line fixed by the common council of the city of Janesville; admitted that none of the buildings so erected was placed there by permission of the legislature of the state of Wisconsin or any department of the United States; admitted that the buildings were of frame construc-

tion, denied that they were highly inflammable, and denied that the maintenance of the piles, piers, walls, and buildings in said river interfere with navigation or constitute an obstruction to the use of the river, or that the maintenance of the building caused any damage to adjacent property owners, or that the building is a menace to the safety of the public or constitutes a public nuisance. A large amount of testimony was taken upon the trial, and the court made and filed its findings of fact as follows:

"1. That the Rock river is in fact navigable and navigated as particularly recited in the opinion filed herewith, which recitals in that regard are hereby made a part hereof, and is not otherwise navigated or navigable.

"2. That the defendant is the owner in fee of a tract of land within the city of Janesville extending to and bordering on the said river, particularly described as in the complaint alleged.

"3. That on said tract there is and was at the time of defendant's purchase thereof a business block as in the complaint alleged, the easterly foundation wall of which rests within the original low-water line of said river. That adjacent to said building on the easterly and river side thereof the defendant, without legislative authority, erected upon piles driven into the bed of the stream the store building described in the complaint, which is situated entirely over the bed of said river, but which does not extend beyond the center or thread of said stream, and which cost approximately $50,000 and is constructed as in the complaint alleged. That a bridge extends across said river adjacent to defendant's building, and that other buildings are located over said stream opposite defendant's building on the other side of said bridge and stand upon piles, all as in the complaint alleged. And that the owners of the fee of the bed of the stream easterly of defendant's building and on the same side of the bridge intend to erect buildings over said stream the entire width thereof.

"4. That defendant's said building is not an obstruction to any navigation existing, contemplated, or reasonably to be expected upon said stream.

"5. That defendant's building, by reason of the general situation existing, does to some extent enhance the possibility of injury to public and private property by flood and fire; but except in case of conjunction of flood and fire it no more increases possibility of injury from fire than does every other building of similar construction within the business district of said city, and excepting as aforesaid does not increase the possibility of injury from any flood such as had occurred at said city since 1840 or such as there is any known precedent of in the Rock river valley. And that any such injury is not imminent, and it is not reasonably certain that any such will ever be caused or contributed to by defendant's said building. And the defendant's said building is not a menace to the safety of public or private property or to the safety of the public in any respect.

"6. That prior to erection by defendant of his said building it was declared by the supreme court of the state of Wisconsin, in two certain cases prosecuted therein entitled *State v. Carpenter* and *Janesville et al. v. Carpenter,* upon facts considered by said court as existing in no material matters different from the facts herein found to exist, that the erection and maintenance over the Rock river at Janesville by riparian owners and those acquiring therefrom title to the bed of the said river, of buildings in no material way different from defendant's building in location, foundation, and construction, were lawful, and that such buildings did not constitute a nuisance either as obstructions to navigation or as enhancing dangers to the public from flood and fire. And the defendant, in erecting said building, relied on the law respecting said matters being as declared in said causes. And that other riparian owners at Janesville and various other cities upon said river have erected buildings upon piles over said river, in the aggregate of a great value, apparently relying upon the law as so declared."

The part of the opinion referred to in the first subdivision of the findings of fact is as follows:

"That the Rock river is by law a navigable stream, everybody knows. Everybody also knows that it is in fact navigable to some extent, and also knows pretty accurately what that extent is. A vast amount of testimony was adduced

which shows pretty clearly that what everybody knows respecting the matter is in fact true.   These matters may be briefly stated as follows:

"There are many acts of the legislature, both public and private, declaring and recognizing that the Rock river at Janesville is a navigable stream.   It is navigable throughout its course from Lake Koshkonong south for canoes and skiffs, if they be carried around numerous dams.   It is actually so navigated by such a boat going down stream, not to exceed once in a dozen years or so, in the pleasurable reversion of some 'back-to-nature enthusiast.'   It is not now navigated and is not in its present condition capable of being navigated throughout such portion of its course by any other kind of boat or by logs or by any kind of raft.   On such part of its course there is no through commerce whatever, and the conditions of the adjacent country and the requirements of commerce are such that there will never be any through commerce on the stream as long as existing railroads are operated and other overland highways exist.   The river is navigable for and is in fact navigated by small motor boats between or for a distance above dams at various places along said portion of its course, and at such places is not otherwise navigable. Above the upper dam at Janesville it is so and not otherwise navigable and navigated.   Between the upper and lower dams at Janesville, where defendant's building is situated, it is navigable for skiffs and canoes and small motor boats drawing a foot or eighteen inches of water, and is not otherwise navigated or navigable.   There has been no navigation of any sort, except as here expressly stated, for many years, and none other is contemplated, and none other is reasonably to be expected.

"The building of defendant that is complained of is upon piles and is built over the water of the river.   It seems to me very plain that the building does not at all obstruct or interfere with navigation of any considerable nature, and that it does not obstruct or interfere with such navigation as the river at the place is capable of being used for to any substantial or appreciable extent.   With the building as it is, there is ample room outside the building for the passage of any and all craft the river will float.   One can paddle or row or get with such motor boat to any place that he may want to

get to if the building and its supports were removed.   If one goes under defendant's building in a boat he may graze a pile or so, but that is a trifling matter.   *'De minimis non curat lex.'* "

Upon the facts so found the trial court concluded that the defendant's building was not a nuisance, and directed judgment dismissing the complaint upon the merits, and judgment was entered accordingly, from which plaintiff appeals.

For the appellant there were briefs by the *Attorney General* and by *Ralph W. Jackman* of Madison, special counsel, and oral argument by *Mr. Jackman.*

For the respondent there was a brief by *Charles E. Pierce* of Janesville, attorney, and *Harry L. Butler* of Madison, of counsel, and oral argument by *Mr. O. A. Oestreich, Mr. M. G. Jeffris,* and *Mr. Pierce,* all of Janesville.

ROSENBERRY, J.   This action is brought under sub. 1–4, sec. 1596, Stats. 1915:

"1. All rivers and streams which have been meandered and returned as navigable by the surveyors employed by the government of the United States and all rivers and streams, meandered or nonmeandered, which are navigable in fact for any purpose whatsoever are hereby declared navigable to the extent that no dam, bridge, or other obstruction shall be made in or over the same without the permission of the legislature; but this section shall not be construed to impair the powers granted by law to towns, counties, or cities to construct bridges over such rivers and streams.   The consent of this state is hereby given to the acquisition by the United States of all lands and appurtenances in this state which have been or may be acquired by the United States for the purpose of erecting thereon dams, abutments, locks, lockkeepers' dwellings, chutes, or other structures necessary or desirable in improving the navigation of the rivers or other waters within and on the borders of this state, and the United States may hold, use, and occupy such lands and other property and exercise exclusive jurisdiction and control over the same subject to the right of this state to have civil and criminal process

issued out of any of its courts executed within and upon said lands.

"2. Any dam, bridge or other obstruction constructed or maintained in or over any navigable waters of this state in violation of the provisions of this section is hereby declared to be a public nuisance, and the construction of any such dam, bridge or other obstruction may be enjoined or its maintenance abated by action at the suit of the state or any citizen thereof.

"3. Any person, firm, association of individuals, or corporation violating any of the provisions of this section after January 1, A. D. 1913, shall forfeit for each such offense, and for each day that any such dam, bridge or other obstruction is maintained or remains in or over, any such waters, more than fifty dollars, the same to be collected in an appropriate action to be brought and prosecuted by the attorney general or by some other duly authorized person in behalf of the state. Any forfeitures incurred prior to January 1, A. D. 1913, are hereby expressly remitted.

"4. It shall be the duty of the railroad commission to report to the governor any violation of this section, and the governor shall thereupon cause the attorney general, or some other person duly authorized by the governor to act in his stead, to institute proceedings against the violator as provided in subsections 2 and 3 of this section."

By the enactment of ch. 652, Laws 1911, amending sec. 1596, the following changes were made: (1) The prohibitions contained in the section prior to its amendment were made applicable to all waters within the state, meandered or nonmeandered, which are navigable in fact for any purpose; (2) any dam, bridge, or other structure made or maintained in violation of the provisions of the section was declared a public nuisance and its abatement provided for; (3) a penalty was prescribed; and (4) it was made the duty of the railroad commission to cause the act to be enforced.

It may be said at the outset that the enactment of this law indicates a change in state policy respecting the obstruction of navigable streams, and that any one placing an obstruc-

tion in the navigable streams of the state subsequent to its enactment faces a situation very different from that which existed prior thereto. What the consequences of this change of state policy may be, we do not here and now undertake to say, as the question is not before us in this case. A reference to it is necessary, however, because it is claimed that the obstruction complained of in this case can now no longer be maintained, the prohibition being against the maintenance of an obstruction as well as against its construction.

By ch. 72, Laws 1853, the state policy with reference to navigable streams was declared as follows:

"Sec. 2. All rivers and streams of water in this state in all places where the same have been meandered, and returned as navigable by the surveyors employed by the United States government, are hereby declared navigable to such an extent, that no dam, bridge, or other obstruction, may be made in or over the same, without the permission of the legislature: Provided, that nothing herein contained, shall be construed so as to affect any act now in force granting to towns, or county boards of supervisors, the power to erect, or authorize the construction of bridges across such streams.

"Sec. 3. The boundaries of lands adjoining waters, and the several and respective rights of individuals, the state, and its citizens, in respect to all such lands and waters, shall be determined in conformity to the common law, so far as applicable as evidenced by judicial determinations in other states, in which the courts in such cases have adhered to its principles. . . ."

In a long line of decisions beginning with *Jones v. Pettibone*, 2 Wis. 308, decided at the December term, 1853, and ending with *Metropolitan Inv. Co. v. Milwaukee*, 165 Wis. 216, 161 N. W. 785, decided at the January term, 1917, the rights of the public and of private parties in and to the banks, waters, and beds of the navigable streams of this state have been discussed and stated so frequently and so fully that a discussion at this time is needless. However, certain fundamental principles which have been established may be briefly

restated, not for the purpose of restating the law, but for the purpose of having them clearly in mind in an endeavor to apply these established principles to the subject matter of this litigation.

Upon the organization of the several states the title to the beds of all streams navigable in fact vested in the states in trust for public purposes. *Willow River Club v. Wade,* 100 Wis. 86, 109, 76 N. W. 273; *Barney v. Keokuk,* 94 U. S. 324.

At common law a navigable stream was a public highway subject to public use, and the right of passage over it extended to all parts of the channel, and to abate an obstruction as a nuisance it was not necessary that the obstruction should actually have interfered with navigation; it was sufficient if it rendered it less convenient and less useful. Angell, Watercourses (7th ed.) § 554; *State v. Narrows Island Club,* 100 N. C. 477, 6 Am. St. Rep. 618; *Pascagoula B. Co. v. Dixon,* 77 Miss. 587, 28 South. 724, 78 Am. St. Rep. 537.

By the enactment of ch. 72, Laws 1853, as re-enacted and re-affirmed at various times, the legislature declared the policy of the state with reference to all streams included within its terms, and thereby gave to all the waters therein described the incidents of navigable streams at common law, so far as they are navigable in fact; and the distinction theretofore existing between tide and nontidal waters as to navigable character was abolished. *Willow River Club v. Wade,* 100 Wis. 86, 99, 104, 76 N. W. 273. See Farnham, Waters, § 24 and cases cited.

While since the decision in *Jones v. Pettibone* the doctrine that the title of a riparian owner on a navigable stream extends to the center or thread of the stream has been and still is rightly adhered to, this court has from that time to this never ceased to assert that the title of the riparian owner to the bed of the stream is a qualified title and subject to the public right of navigation with all its incidents. *Jones v.*

*Pettibone,* 2 Wis. 308; *Barnes v. Racine,* 4 Wis. 454; *Walker v. Shepardson,* 4 Wis. 486; *Wis. River Imp. Co. v. Lyons,* 30 Wis. 61; *Olson v. Merrill,* 42 Wis. 203; *Delaplaine v. C. & N. W. R. Co.* 42 Wis. 214; *Diedrich v. N. W. U. R. Co.* 42 Wis. 248; *Stevens Point B. Co. v. Reilly,* 46 Wis. 237, 49 N. W. 978; *A. C. Conn Co. v. Little Suamico L. M. Co.* 74 Wis. 652, 43 N. W. 660; *State v. Carpenter,* 68 Wis. 165, 31 N. W. 730; *Janesville v. Carpenter,* 77 Wis. 288, 46 N. W. 128; *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273; *Ill. S. Co. v. Bilot,* 109 Wis. 418, 84 N. W. 855, 85 N. W. 402; *Water Power Cases,* 148 Wis. 124, 134 N. W. 330. See *U. S. v. Chandler-Dunbar W. P. Co.* 229 U. S. 53, 33 Sup. Ct. 667; *State ex rel. Att'y Gen. v. Norcross,* 132 Wis. 534, 543, 112 N. W. 40; *Diana S. Club v. Husting,* 156 Wis. 261, 145 N. W. 816.

The right to maintain a navigable river free of all obstruction to navigation, as that term was understood at common law, is not inconsistent with such private ownership of the bed of the stream. Wisconsin cases cited above; *The Magnolia v. Marshall,* 39 Miss. 109; *Pascagoula B. Co. v. Dixon,* 77 Miss. 587, 28 South. 724, 78 Am. St. Rep. 537; *McLennan v. Prentice,* 85 Wis. 427, 443, 55 N. W. 764; *Priewe v. Wis. S. L. & I. Co.* 93 Wis. 534, 67 N. W. 918; *U. S. v. Chandler-Dunbar W. P. Co., supra.*

If the right of the public to have the navigable streams of the state kept free from obstruction has been modified to any extent, it has been so modified by the force and effect of a state policy so long adhered to as to have become a rule of property, thereby vesting certain rights in the riparian proprietor by implication of law. *Willow River Club v. Wade, supra.* This modification, if such it is, having been sanctioned by the courts and long adhered to, must, under the doctrine of *stare decisis,* be held to have established a rule of property, and at least so far as rights have accrued

thereunder they will not be disturbed. *Olson v. Merrill,* 42 Wis. 203; *Barney v. Keokuk,* 94 U. S. 324; *Brader v. Brader,* 110 Wis. 423, 85 N. W. 681.

With these well established principles in mind, we proceed to a consideration of the status of the property in question. A careful reading of the findings in this case, as well as of the showing made in *State v. Carpenter,* 68 Wis. 165, 31 N. W. 730, and in *Janesville v. Carpenter,* 77 Wis. 288, 46 N. W. 128, clearly shows that the situation existing in the Rock river at the place in question is in many respects peculiar perhaps to that river and to that place. Rock river, judging from the number of dams, is a comparatively rapid running stream; it appears to be a slowly rising stream, due to the fact that it runs through a comparatively level country abounding in lakes and having a slow run-off. Flood waters apparently reach it slowly and are rapidly passed away.

Apart from the provisions of sec. 1596 as amended by ch. 652, Laws 1911, substantially the exact situation presented by the facts as found by the trial court in this case has been twice before this court, and in these cases this court held that structures of substantially the same kind and extent as are found to exist in this case by reason of the peculiar circumstances found in connection therewith were structures which could not be abated as a nuisance at the suit of the state or private parties. *State v. Carpenter, supra; Janesville v. Carpenter, supra.*

In reliance upon these decisions large investment has been made, property rights have grown up, and, as before stated, these rights so far as vested should be protected. This court at this time is not at liberty to pass upon the situation presented by the findings in this case as an original proposition, and it is not necessary for us to say whether or not we would upon these facts as an original question arrive at the same conclusion. It is our duty in administering the law to rec-

ognize and give effect to these decisions under well known and well established principles of law. *Barney v. Keokuk,* 94 U. S. 324.

On behalf of the state it is claimed that by the enactment of ch. 652, Laws 1911, the situation has been changed. If by this is meant that the defendant or those similarly situated may, without compensation, be summarily deprived of valuable property rights which accrued prior to the enactment of said chapter, sec. 1596 as amended so considered and applied would be invalid. It must therefore be held that the provisions of sec. 1596 as amended do not affect the rights of the defendant accrued at the time of the enactment of ch. 652, Laws 1911. Structures of the character of those complained of in this case, similarly situated and erected prior to the enactment of ch. 652, having been declared to be lawful and not nuisances, cannot be made such by mere legislative fiat. *Water Power Cases,* 148 Wis. 124, 145, 134 N. W. 330. While the evidence discloses a situation at Janesville which may in some of its aspects be deemed inimical to the public welfare, it is nevertheless true that, if the situation is to be changed, it must be done by lawful and constitutional methods, and it cannot be done by depriving private citizens of property rights without just compensation.

While the exact date of the erection of the building is not shown, it appears to have been erected some time during the early nineties; at any rate long prior to the enactment of ch. 652, Laws 1911. It must be held, therefore, that the building described in the complaint cannot be removed as a nuisance within the rules above stated, and that the judgment of the circuit court is right.

*By the Court.*—Judgment affirmed.