S. S. Kresge Company, Respondent, vs. Railroad Commission of Wisconsin, Appellant.

*January 16—May 12, 1931.*

480

For the appellant there was a brief by the *Attorney General* and *Samuel Bryan,* assistant attorney general, and oral argument by the *Attorney General* and *Adolph Kanneberg* of Madison.

For the respondent there was a brief by *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *Otto A. Oestreich.*

The following opinion was filed February 10, 1931:

ROSENBERRY, C. J.   The first relief prayed for in the plaintiff's complaint is that the Railroad Commission of the

state of Wisconsin be enjoined from objecting to the granting by the War Department of a permit for the erection of the building in question. This phase of the case did not receive a great deal of consideration. We find no discussion of it in the briefs of counsel for the state. We are referred to no provision of the statutes which makes it the duty of the Railroad Commission to appear before the War Department in cases of this kind, nor do we find anything in the statutes which restrains the Railroad Commission from taking such a step or doing any other thing which in its judgment it is proper for it to do in the exercise of the powers conferred upon it over the navigable waters of the state. Whether the commission should or should not appear seems, therefore, to be a matter of official discretion upon its part. Its appearance or failure to appear has no legal significance. It is quite apparent that the Railroad Commission conceives it to be its duty to preserve the rights of the state from any invasion by riparians. It is nowhere pointed out nor are we able to see upon what grounds the courts of this state can control or direct the discretionary action of the Railroad Commission in matters of this kind. If it be said that in the absence of such court direction or restraint the Railroad Commission may, by reason of the position taken by the War Department, prevent the plaintiff from securing a permit which the War Department might in the absence of objection grant, it can only be said in reply that that is a matter for the Railroad Commission itself to determine. It is hardly conceivable that the Railroad Commission would exercise its vast powers merely for the sake of vindicating a barren, naked right with great resulting loss to private interests and no benefit to the public.

On the other hand, under the Uniform Declaratory Judgments Act (sec. 269.56, Stats.), the plaintiff being desirous of erecting a building upon the site of the building now occupied by it, the case comes within the purview of that act when the plaintiff seeks to have declared its right to erect

and maintain the building in its proposed location. From the allegations of the complaint it clearly appears that there is a controversy with respect to its right to maintain the building upon the proposed location, and it ought not to be required to make the investment with the risk of having the structure declared a nuisance at some subsequent time if the controversy can now be resolved one way or the other. In considering the questions of law raised by the demurrer, attention should be directed to the wide distinction between dams and other structures in the bed of a navigable river. It is well established that the right of a riparian in the bed of a navigable stream is subject to the public easement of navigation with all its incidents, including of course the right to improve the navigability of the stream and for that purpose to make such use of the stream as the state in the public interest deems to be useful in that regard. *Wis. River Imp. Co. v. Lyons,* 30 Wis. 61. The court there said:

"This easement, or right of the public to regulate, control, and direct the flow of the navigable waters, to impede or accelerate such flow, to deepen the channel or to remove obstructions found in it, or to change the direction of the current from one bank of the stream to the other, or to make an entirely new channel, and, in short, to do anything within the banks of the stream itself which may be considered for the benefit and improvement of commerce and navigation, will be found to be a most extensive and absolute one." Citing *Arimond v. Green Bay & Mississippi Canal Co.* 31 Wis. 316.

The proposition there laid down has been many times approved and reaffirmed and it still is the law of this state. *Fox River Paper Co. v. Railroad Comm.* 274 U. S. 651, 47 Sup. Ct. 669, 71 Lawy. Ed. 1279. We are not concerned here with the power of the state to vest any right to occupy the bed of a navigable stream in a riparian owner. Such power, great as it is, is still subject to some limitation. *Milwaukee v. State,* 193 Wis. 423, 214 N. W. 820. The state has made no attempt to confer any rights upon the plaintiff

or its predecessors in title. On the contrary, it is claimed that by the provisions of sec. 30.01 (2) and sec. 31.23 (1), printed in the margin,[1] the state has withdrawn any implied consent which might theretofore have existed and that any obstruction to the navigation of the stream is by sec. 31.25 declared to be a nuisance and therefore unlawful. There is no allegation in the complaint to the effect that the proposed structure when erected will constitute no obstruction to the navigation of the river. Such allegation as there is in that regard is to be found in paragraph VI of the complaint, in which it is alleged that Rock river at the point in question is spanned by a bridge known as the Grand avenue bridge, constructed of concrete and steel upon reinforced concrete piers in the bed of the river and "having no facilities for any navigation of said river except that rowboats can pass through the openings between said piers; it being otherwise a complete obstruction to any river navigation at said point."

This combined with the allegation found in paragraph III that there has been no navigation of the river for many years north of the city of Sterling, Illinois, and "that said river is not now navigated and in its present condition is not

[1] 30.01 (2) All rivers and streams which have been meandered and returned as navigable by the surveyors employed by the government of the United States, and all rivers, streams, sloughs, bayous and marsh outlets, whether meandered or nonmeandered which are navigable in fact for any purpose whatsoever are hereby declared navigable to the extent that no dam, bridge, or other obstruction shall be made in or over the same without the permission of the legislature.

31.23 (1) Every person or corporation that shall obstruct any navigable waters and thereby impair the free navigation thereof, or shall place therein or in any tributary thereof any substance whatever that may float into and obstruct any such waters or impede their free navigation, or shall construct or maintain, or aid in the construction or maintenance therein of any bridge, boom or dam not authorized by law, shall forfeit for each such offense, and for each day that the free navigation of such stream shall be obstructed by such bridge, boom, dam or other obstruction, a sum not exceeding fifty dollars. But the floating or movement of logs or timber in navigable waters, or the necessary use of temporary booms in the course of such floating or movement shall not incur such forfeiture.

capable of being navigated and no navigation thereof is con-
templated or reasonably to be expected," are the only allega-
tions relating to navigability of the stream. The fact that
the construction of the proposed building, its east side rest-
ing upon the shore and its westerly side on a row of concrete
piers in line with the concrete piers which support the bridge,
will remove many obstructions now in the river, hardly
amounts to an allegation that the proposed structure when
completed will constitute no obstruction to navigation. While
there is no navigation at the present time, it cannot be said
that there will never be navigation of the river.

On behalf of the plaintiff it is argued that under the doc-
trine of *State v. Sutherland,* 166 Wis. 511, 166 N. W. 14,
and the preceding cases of *Janesville v. Carpenter,* 77 Wis.
288, 46 N. W. 128, and *State v. Carpenter,* 68 Wis. 165,
31 N. W. 730, the plaintiff has a vested right protected by
the constitutional guaranties to maintain the proposed struc-
ture in the manner indicated. This requires an examination
of these cases. *State v. Carpenter* was a case upon informa-
tion by the attorney general praying that an injunction be
issued to restrain the defendant from driving piles within the
channel and low-water mark of Rock river within the city
of Janesville as a foundation for the construction thereon
of a large building. The question in that case was stated by
the court as follows:

"Outside the record, we may take judicial knowledge that
said river, for a great many years, within cities and villages
and in other places, has been obstructed by mill-dams,
bridges, and buildings, in a similar manner, through this
state and the state of Illinois, and that said river has not
been practically and in fact navigable or used, needed, or re-
quired for navigation in the way of transportation or travel.
This being the condition of Rock river within the city of
Janesville and elsewhere, was it an abuse of discretion for the
circuit court to dissolve the injunction? Perhaps the ques-
tion should be broader than this, in order to settle, for the
time and under the present conditions, the question whether

an injunction at the suit of the attorney general ought to have been granted or continued in such a case."

After considering at length the evidence with respect to the navigability and the use of the river for the purposes of navigation, the court said:

"It is not probable that any one, much less the attorney general, would concern himself about a stream which has been so long abandoned for all purposes of navigation, and completely obstructed in so many places, and not needed or used for such purposes, and neither the public nor individuals have suffered any injury or inconvenience thereby. When any one in good faith shall have the means of using this river for the legitimate purposes of navigation, and shall desire to use the same for such purposes, it will be time enough for him or the attorney general to complain; and the courts of law will afford, in such an exigency, an ample remedy. . . .

"We do not think that the circuit court abused its discretion in dissolving the injunction." . . .

Far from holding that the riparian in that case as an incident to his ownership had a right to erect the piers in question, the court merely held that the circuit court did not abuse its discretion in denying the state, at the suit of the attorney general, aid of a court of equity.

*Janesville v. Carpenter, supra,* was an action brought by the city to restrain the defendant Carpenter from driving piles in the bed of Rock river for the purpose of erecting thereon a building. Ch. 423 of the Laws of 1887 provided that it should be unlawful and presumptively injurious to persons and property to drive piles, etc., in Rock river within the limits of the county of Rock, and that the doing of any act forbidden by the law should be enjoined at the suit of any owners or lessee of the right to use the water of said river to operate any mill, etc. This act was held unconstitutional and void on the grounds (1st) that it deprived riparian owners of property without compensation; (2d) that it was

a usurpation of the judicial power by the legislature; and (3d) that it was discriminatory and class legislation. This case likewise turned very largely upon the exercise of discretionary power by a court of equity and upon the validity of the statute. This case was decided in 1890, and the situation remained unchanged until *State v. Sutherland, supra,* decided in 1917, which was an action brought by the attorney general to abate as a public nuisance a building standing on piles in the bed of Rock river at Janesville. In the complaint it was alleged that the defendant, without any authority or permission from the legislature, had erected in the bed of Rock river a building supported by piles and piers of concrete and stone and had filled in from the west bank of the river at the west end of the Milwaukee street bridge, and that the structures so erected constituted obstructions in the river, and other allegations respecting other structures generally interfering with the navigability of the stream. The defendant answered and among other things alleged that Rock river was at the point in question not a navigable stream; that the building was in fact so erected as not to in any way interfere with the flow of water or to interfere with the rights of any person to fish or to use said waters for hydraulic or other purposes; and as to the filling, alleged that this was a boundary line fixed by the common council of the city of Janesville; and alleged that the buildings had been erected in reliance upon the decisions of courts of competent jurisdiction to the effect that the buildings could be used for business purposes, etc. There was a trial and the court found as a matter of fact that Rock river was by law a navigable stream, found it was navigable throughout its course from Lake Koshkonong south for canoes and skiffs, if they are carried around numerous dams; that it is navigated by boats going down stream not to exceed "once in a dozen years or so." "It is not now navigated and is not in its

present condition capable of being navigated throughout such portion of its course by any other kind of boat or by logs or by any kind of raft."

Manifestly the action was one to eject the riparian owner from the bed of the stream at a point where the structures erected by him did not interfere with navigation. In fact it was not held in any of these cases that if any of the structures erected or proposed to be erected should thereafter be found to be obstructions in fact to navigation in the stream, they could be maintained as against the state asserting its right to remove the same in aid of navigation. Under our decisions, from *Jones v. Pettibone,* 2 Wis. 308, and *Wis. River Imp. Co. v. Lyons,* 30 Wis. 61, down, it has been consistently held that the right of a riparian to erect structures in a navigable stream is subordinate to the right of the state to improve the stream in aid of navigation. This right was vindicated in *Black River Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 659, 11 N. W. 443, and *Cohn v. Wausau Boom Co.* 47 Wis. 314, 2 N. W. 546.

So that it must be settled despite some language used in *Janesville v. Carpenter, supra,* that the right of the riparian under such circumstances, even where the structures are in aid of navigation, must yield to the rights of the state when asserted by itself or its agent for the purpose of aiding and improving navigation. *Cohn v. Wausau Boom Co., supra.*

If the complaint in this case contained an allegation that the proposed structure would constitute no obstruction to the navigation of the river, that allegation could only relate to conditions as they now exist. Even under the Declaratory Judgments Act, courts are not required to assume the role of prophets. No one can say that at some future time Rock river may not be regarded as navigable in fact and that a structure so placed would not constitute an obstruction to such navigation. If such became the fact, the state then, in

the exercise of its power to aid and improve navigation, might require its removal. The legislature cannot of course create facts, but conditions may change whatever the views of the present generation may be as to probabilities of such change. *Milwaukee v. State, supra,* contains a strong intimation that the state can part with such title as it has in execution of the trust imposed upon it by law only when that act is done in aid of navigation. We must assume that the defendant is well advised that it acts in the public interest and that it declines to foreclose the state in the exercise of its rights at some future time when it may be necessary to assert them in the public interest. *State v. Sutherland, supra,* did not deal with the nature of the right by virtue of which the defendant maintained the building in question, nor are we required to deal with that matter in determining the issues in this case. Whatever the plaintiff's rights may be, they are and must remain subordinate to the right of the state to improve navigation and as trustee for the public.

*By the Court.*—The order appealed from is reversed, with directions to the trial court to sustain the demurrer and for further proceedings according to law.

The following opinion was filed May 12, 1931:

PER CURIAM (*on motion for rehearing*). Plaintiff and respondent in the above entitled action made the following motion:

"Now comes the above respondent, S. S. Kresge Company, and respectfully moves the court for a rehearing and for a mandate containing a definite declaration and definition of its legal right, as regards the replacement of the existing building with the proposed new building involved in this action, to the end that it may be decided and the parties informed of their rights respecting the matter involved under the conditions now existing as regards Rock river as set forth in the complaint and at the point in question, and di-

recting the judgment to which respondent is entitled on the facts alleged and under the Declaratory Judgments Act."

In the brief it is said:

"The mandate reverses the order appealed from, directs the trial court to sustain the demurrer, and for further proceedings according to law. As regards the prayer for an injunction against the Railroad Commission, no fault is found with this mandate, as already stated, but the silence of the mandate respecting the prayer for a declaratory judgment leaves no guide whatever as to the disposition of this case except upon the theory that the complaint does not state facts sufficient to entitle plaintiff to some judgment in that regard. The Declaratory Judgments Act, sec. 269.56 (1), provides:

" 'Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.'

"This provision contemplates that in an action thereunder a judgment declaring the rights involved shall be rendered. Of course, that does not mean that, if the facts alleged do not support the right claimed by plaintiff, no declaratory judgment shall be entered in the action. The facts presented may support the right claimed by defendant. In either event the declaratory judgment would follow and establish whatever right the facts justified."

It must be remembered that the case was here upon demurrer; that the complaint combined a prayer for equitable and declaratory relief. Upon the record as it stood the court was hesitant to foreclose the question from further consideration. The court is made aware upon demurrer only of such facts as are stated in the complaint. Other facts may or may not exist. As to that situation the court knows nothing. Therefore, the customary practice was followed in order that respondent might, if it was so advised, amend its

complaint. Upon this motion, which is set out in detail, the question as to equitable relief having been disposed of, we construe the motion as a request for final determination of the rights of the parties. As it now stands, the decision already rendered is correctly interpreted in the brief of respondent's counsel. We shall not here reconsider the authorities, but merely say that since the enactment of secs. 30.01 (2) and 31.23 (1), no riparian has without the consent of the state a right to invade the bed of a navigable stream with a structure of any kind even though it be one in aid of navigation; that under the existing law state authorities cannot give a consent to an invasion of the bed of a navigable stream, which consent would conclude the state if in the future it shall be necessary for the state to remove the structure in aid of navigation; that as to such structures as are now in the bed of Rock river at the point in question, which do not in fact obstruct navigation, we see no occasion to add to what has been declared in former cases, as that is not within the scope of a judgment for declaratory relief.

Motion for rehearing denied, with $25 costs.